WILLIAM LAWSON KING et al. *v.* THE MAYOR AND
COUNCIL OF ROCKVILLE, MARYLAND

[No. 1396, September Term, 1981.]

\* \* \*

WILLIAM LAWSON KING et ux. *v.* MONTGOMERY
COUNTY, MARYLAND

[No. 1407, September Term, 1981.]

*Decided July 9, 1982.*

114

The causes were argued before MOYLAN, LOWE and MacDANIEL, JJ.

*R. Edwin Brown,* with whom were *John R. Clapp* and *Brown & Sturm* on the brief, for appellants.

*Paul T. Glasgow, Assistant City Attorney for Rockville, Maryland,* with whom was *Roger W. Titus, City Attorney for Rockville, Maryland,* on the brief, for appellee Mayor and Council of Rockville. *Joseph M. Mott, Assistant County Attorney for Montgomery County,* with whom were *Paul A. McGuckian, County Attorney for Montgomery County,* and *Robert G. Tobin, Jr., Deputy County Attorney for Montgomery County,* on the brief, for appellee Montgomery County, Maryland.

MacDANIEL, J., delivered the opinion of the Court.

Case No. 1396, September Term, 1981, William Lawson King, Cordelia E. King and William I. King, appellants, versus the Mayor and Council of Rockville, Maryland was consolidated for argument on appeal with Case No. 1407, September Term, 1981, William Lawson King and Cordelia E. King, appellants, versus Montgomery County, Maryland. For purposes of simplicity we shall hereafter refer to all appellants as appellants or Kings; Mayor and Council of Rockville, Maryland as Rockville; and Montgomery County, Maryland as Montgomery County. In both cases appellants question the constitutionality of the procedure whereby an

order of limited entry under § 12-111 (a) and (b) [1] of the Real Property Article (1981 Repl. Vol.) of the Maryland Annotated Code was obtained from the Circuit Court for Montgomery County, permitting agents of Rockville and Montgomery County to enter upon appellants' property for purposes of making a survey and obtaining other information relating to the acquisition or future public use of that property. Appellants do not directly attack the constitutionality of that statute which permits such an entry; they attack its application to them in these cases because, they contend, the notice given was served upon their lawyer, not them personally, and they were deprived, therefore, of a right to be heard before the order to enter was signed *ex parte.*

### Case No. 1396 (Rockville)

Rockville notified the Kings that its respective agents would be entering upon the property of the Kings in order to perform "surveys, run lines, set stakes, markers and obtain

---

1. Real Property § 12-111 (a) and (b) provide:

"(a) *Right of entry; right to set stakes.* — Civil engineers, land surveyors, real estate appraisers, and their assistants acting on behalf of the State or of any of its instrumentalities or any body politic or corporate having the power of eminent domain after every real and bona fide effort to notify the owner or occupant in writing with respect to the proposed entry may:

(1) Enter on any private land to make surveys, run lines or levels, or obtain information relating to the acquisition or future public use of the property or for any governmental report, undertaking, or improvement.

(2) Set stakes, markers, monuments, or other suitable landmarks or reference points where necessary; and

(3) Enter on any private land and perform any function necessary to appraise the property.

(b) *Order to permit entry.* — If any civil engineer, surveyor, real estate appraisers, or any of their assistants is refused permission to enter or remain on any private land for the purposes set out in subsection (a), the person, the State, its instrumentality, or the body politic or corporate on whose behalf the person is acting may apply to a law court of the county where the property, or any part of it, is located for an order directing that the person be permitted to enter on and remain on the land to the extent necessary to carry out the purposes authorized by this section."

other information relating to the acquisition or future public use of the property" in accordance with R.P. § 12-111 (a), unless an objection was made. The Kings responded by stating that no survey parties, agents or other persons would be permitted to enter the property for any purpose.

On October 9, 1981, Rockville, pursuant to § 12-111 (b), obtained an order from the Circuit Court for Montgomery County granting permission to enter upon appellants' land. Alleging a denial of constitutional due process, appellants contend that:

> "The circuit court erred and deprived the appellants of due process when it signed an *ex parte* order permitting entry upon the appellants' land before the petition requesting that order was served upon the appellants or before the appellants were given an opportunity to respond to the petition."

On motion to dismiss the appeal, however, appellee points out that it has already performed its mission under the order being appealed, and that no further action can or will be taken by appellee pursuant to that order. Appellants reply that they are still subject to possible encroachments upon other sections of their land pursuant to the order. They also would have us address the constitutional issues they have raised by brief because it will aid them in a trespass suit for damages which they have filed regarding this case pursuant to R.P. § 12-111 (c).[2]

At oral argument appellants conceded that not only had the survey and other work under the order been completed but the property has been taken and the road completed.

---

**2.** Real Property § 12-111 (c) provides:

"(c) *Damage to or destruction of property.* — If a civil engineer, surveyor, real estate appraiser, or any of their assistants enters on any private land under the authority of this section or any court order passed pursuant to it, and damages or destroys any land or personal property on it, the owner of the property has a cause of action for damages against the civil engineer, surveyor, real estate appraiser, or assistant and against the state, its instrumentality, or the body politic or corporate on whose behalf the person inflicting the damage was acting."

Appellee conceded that it has no intention, under color of the order, to enter upon other parts of the land in the future. The purpose behind the issuance of the order having been achieved and completed, the question of its issuance is moot for purposes herein. We shall therefore vacate the order from which this appeal arose and grant the appellee's motion to dismiss.

## Case No. 1407 (Montgomery County)

As in the *Rockville* case, Montgomery County notified appellants of its intention to enter upon their land to perform surveys, etc. pursuant to § 12-111 (a) and were notified by appellants that no survey parties, agents or other persons would be permitted to enter upon the property for any purpose. On June 17, 1981, an order of court was issued granting appellee permission to enter upon appellants' land pursuant to § 12-111 (b). This order was hand delivered to counsel for appellants on June 16, 1981, and a "discussion" concerning the order took place in the judge's chambers that same afternoon with all counsel present.[3]

Unlike the *Rockville* case, Montgomery County has taken no action under the June 17, 1981, court order, thereby presenting to this Court a viable issue stated by appellants thusly:

"Did the circuit court err and deprive the appellants of due process when it signed an *ex parte* order permitting entry upon the appellants' land before the petition requesting the order was served [4] upon the appellants or before the appellants were given an opportunity to respond to that petition?"

---

**3.** Although Montgomery County seems to suggest that this was equivalent to a "hearing" we find this argument specious. Nothing is shown by way of docket entries or transcript concerning the "discussion." This did not amount to a proper hearing.

**4.** Contained in the joint record extract is a copy of the petition for an order permitting entry. The certificate of service makes clear that a copy of the petition was hand delivered to counsel for the Kings on June 16, 1981. The Maryland Rules of Procedure provide that service upon counsel for a party is service upon the party.

In essence, appellants contend the *ex parte* order deprived them of due process of law in contravention of the Fourteenth Amendment to the Constitution of the United States and Article 24 of the Maryland Declaration of Rights. Before beginning the analysis of the due process question, it should be noted that the Court of Appeals has previously determined that Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning. *Barry Properties v. Fick Brothers,* 277 Md. 15 (1976).

The due process question as it relates to § 12-111 has not been previously decided by the Maryland Appellate Courts. Nor have we been referred to or found any federal cases directly on this issue. We can find guidance, however, in those cases which have dealt with due process challenges to the "advance take" or "quick take" method of land acquisition as authorized by Article III, § 40A of the Constitution of Maryland. The "quick take" or "advance take" method allows the sovereign to enter on and take immediate possession of private land upon tender to the owner of an amount estimated to be the fair market value of the land and improvements taken.

The legion of cases and authorities make it clear that the Kings would have no federal constitutional right of notice in a condemnation proceeding. *See North Laramie Land Co. v. Hoffman,* 268 U.S. 276 (1925); *Georgia v. Chattanooga,* 264 U.S. 472 (1924); *Joslin Co. v. Providence,* 262 U.S. 668 (1923); *Bragg v. Weaver,* 251 U.S. 57 (1919); 1 Nichols on Eminent Domain, § 4.102[1] (3d ed. 1976).

This is so because the Supreme Court has repeatedly characterized the condemning authority's decision on the necessity for a taking and the quantity to be appropriated as legislative and has, therefore, denied landowners the right to participate in that decision making process or to litigate on federal constitutional grounds the decision to condemn private property. *See U.S. v. Welch,* 327 U.S. 546 (1946); *Joslin* and *Bragg, supra.*

In *Joslin, supra,* the Supreme Court at 678-79 stated:

"Finally, the validity of the act is challenged as denying due process of law, on the ground that the question of the necessity for the taking of the property has not been determined by the Legislature itself, but is relegated to the city to decide *ex parte,* without appeal or opportunity for hearing and decision by an impartial tribunal. That the necessity and expediency of taking property for public use is a legislative and not a judicial question is not open to discussion (citation omitted). Neither is it any longer open to question in this court that the Legislature may confer upon a municipality the authority to determine such necessity for itself. (citation omitted). The question is purely political, does not require a hearing, and is not the subject of judicial inquiry."

In a case involving an "attack" on a statute *not* requiring a hearing prior to a "quick take," the Supreme Court in *Rindge Co. v. County of Los Angeles,* 262 U.S. 700 (1923), at 709 said:

"... this statute is not in conflict with the Fourteenth Amendment, either because it fails to provide for a hearing by the landowners before such resolution is adopted, or otherwise. The necessity for appropriating private property for public use is not a judicial question. This power *resides in the* Legislature, and may either be exercised by the Legislature or delegated by it to public officers. 'Where the intended use is public, the necessity and expediency of the taking may be determined by *such agency and in such mode as the state may* designate. They are legislative questions no matter who may be charged with their decision. . . .' (citation omitted)."

The Supreme Court cases make it clear that the decision of what property to condemn and the necessity for it are legislative determinations. Notwithstanding the abundance

of authority upholding the denial of hearings in eminent domain proceedings appellants allege the proceedings here had not yet reached that stage and they were therefore entitled to a hearing.

To support their argument that they are entitled to a hearing, the Kings cite *Mackie v. Town of Elkton,* 265 Md. 410 (1972). In that case suit was instituted by the Mayor and Commissioners of the Town of Elkton to obtain an order of court pursuant to Art. 33A, § 11 (b) of the Md. Ann. Code [5] directing the Mackies to permit certain civil engineers, land surveyors and their equipment to enter their property for the purpose of conducting certain geological investigations thereon. It was agreed on appeal by the parties that the proposed geological investigations entailed "core drilling" and the "digging of large, deep pits with a backhoe." [6] The court in *Mackie* issued a show cause order upon the town's petition. After the Mackies responded to the petition, a hearing was held and the court determined that such investigations did not constitute a "taking" of property within the meaning of Article III, § 40. It was from that decision that the Mackies appealed.

The Court of Appeals determined that the proposed activity did not come within the language "to obtain information relative to acquisition or future public use of the property or for any governmental report, undertaking or improvement" as set out in the statute.

The Court at 418-19 said:

> "The juxtaposition, in the 1916 statute, of the general phrase to obtain 'any needful information' and the specific itemization of such acts as making surveys, running lines or levels, setting stakes, markers, monuments and reference points suggests, as appellant argues, the application of the

---

5. Now Real Property § 12-111 (b).
6. For a description of "core drilling" and the role of the backhoe in such an operation see Mackie, *supra,* at 411-13.

maxim *ejusdem generis,* sometimes called Lord Tenterden's Rule. In *Smith v. Higinbothom,* 187 Md. 115, 129-30 (1946), we put it this way:

'* * * A narrow construction is permissible under the established rule of *ejusdem generis* that where general words in a statute follow the designation of particular things or classes of subjects or persons, the general words will usually be construed to include only those things or persons of the same class or general nature as those specifically mentioned. This rule is based on the supposition that if the Legislature had intended the general words to be considered in an unrestricted sense, it would not have enumerated the particular things.'

Assuming the rule of *Smith* to be apposite here, then *by the enumeration of specific activities the Legislature must have meant the general language, to obtain 'any needful information,' to embrace only the activities mentioned and activities of the same kind and character.* Clearly they are innocuous and temporary effecting only minimal incidental damage and little, if any, disturbance. *This seems entirely consistent with the specific mandate that 'civil engineers and surveyors * * * shall not damage or destroy any property or lands entered by them in the performance of their work.' And it would surely seem to follow that the Legislature did not equate the placing of stakes and markers, etc., with damage or destruction. One is obliged to conclude that what the appellees contemplate doing on Mackie's land would have been beyond the scope of the 1916 statute.* " (Emphasis added.)

The Court of Appeals did *not* determine that all entries under then Art. 33, § 11 (b) were prohibited; it simply determined that under the facts as presented in *Mackie* the methods to be employed were beyond the statutory ambit and hence, the court erred in granting the petition to enter.

In the present case, Montgomery County sought to enter the Kings' property for the purposes of "conducting surveys and other engineering and appraisal studies relative to a proposed road construction project over the land of the Kings." The order of court specified that the agents of Montgomery County could enter the property for the purposes specified in the petition. Unlike the situation in *Mackie, supra,* there is no indication that the property of the Kings would be subjected to "core drilling" or "backhoe" activities.

The right to enter property pursuant to § 12-111 is a "key element" in the exercise of the power of eminent domain. Section 12-111 (a) permits the agents of a body politic having the power of eminent domain to:

> "(1) Enter on any private land to make surveys, run lines or levels, or obtain information relating to the acquisition or future public use of the property or for any governmental report, undertaking, or improvements;
>
> (2) Set stakes, markers, monuments, or other suitable landmarks or reference points where necessary; and
>
> (3) Enter on any private land and perform any function necessary to appraise the property."

The findings from these permitted activities is necessary for determining whether "that particular piece of property" should be "taken."

Although § 12-111 (b) permits the governmental agency to obtain an order of court "to enter on and remain on the land to the extent necessary to carry out the purposes authorized by this section," it is apparent that the purpose of subsection (b) is to bring a recalcitrant landowner under the contempt power of the court pursuant to § 12-111 (e).[7]

---

7. Real Property § 12-111 (e) states:

"(e) *Obstructing a person acting under court order.* — Any person who has knowledge of an order issued pursuant to subsection

As stated, *supra,* the Kings have a cause of action under § 12-111 (c) for whatever damage or destruction may occur. We think, without deciding, that if Montgomery County undertook activities beyond the scope of those anticipated under the statute, the Kings could invoke the power of the court to enjoin such actions.

It seems reasonable to suppose that the Legislature could have devised a mechanism whereby property owners could be heard prior to entry under § 12-111 if they so intended. Since the Legislature has not provided such an avenue, it is a logical interpretation of the statute that it intended the governmental agencies to enter under § 12-111 (b) without giving the property owner a means of protesting. We reiterate that this does not mean the nature of the work contemplated can exceed what is permissible under the statute.

We find for the above mentioned reasons that the Kings were not entitled to a hearing prior to the issuance of the court's order granting entry to Montgomery County.

> *Case No. 1396 — Order of court vacated; motion to dismiss granted.*
> *Appellants to pay the costs.*
> *Case No. 1407 — Order of court affirmed.*
> *Appellants to pay the costs.*

---

(b) and who obstructs any civil engineer, surveyor, real estate appraiser, or any of their assistants acting under the authority of the order may be punished as for contempt of court."