### Ernest ABRAHAMSON

v.

### SECRETARY OF STATE.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 14, 1990.

Decided Jan. 8, 1991.

---

David J. Corson, Yarmouth, for plaintiff.

Donald W. Macomber, Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

CLIFFORD, Justice.

The Secretary of State (Secretary) appeals from an order of the Superior Court (Cumberland County, *Alexander, J.*) vacating the suspension of Ernest Abrahamson's driving privileges by the Secretary and remanding to the Secretary for reinstatement of those privileges. Because there is substantial evidence in the record to support the Secretary's finding that Abrahamson was operating a motor vehicle while having an excessive blood-alcohol level, we vacate the Superior Court order and remand for affirmance of the suspension.

During the evening of August 6, 1989, because of a defective exhaust system on his automobile, Abrahamson was pulled over on Chebeague Island by Officer Jeffrey Soper of the Cumberland Police Department. The officer detected an odor of alcohol coming from the window of Abra-

hamson's car and asked him to step out of the vehicle. Officer Soper testified that Abrahamson's eyes were bloodshot and glassy. Abrahamson effectively recited the alphabet and counted backward from one hundred to ninety. The officer did note, however, a slight slur in Abrahamson's speech. During the third field sobriety test, a balance test requiring Abrahamson to put his feet together, arms down at his sides and head tipped back with eyes closed, Abrahamson made large circular motions with his body suggestive of impaired balance.

Officer Soper placed Abrahamson under arrest and administered a blood-alcohol breath test to determine his blood-alcohol level. The test kit used by the officer contains a waste bag, a balloon that collects deep lung air, and a volumetric bag designed to hold a specific quantity of lung air after it passes through a vial. The vial contains silica gel through which the lung air passes and from which the content of alcohol in the blood is measured. Officer Soper testified that he inspected the kit for leaks and found none. Following completion of the test, the test kit was sent to a laboratory certified by the Department of Human Services. *See* 29 M.R.S.A. § 1312(6) (Supp.1990). The laboratory reported in a certificate that their analysis showed an amount of alcohol corresponding to 0.15% alcohol by weight in the blood. The certificate also indicated, however, that the test kit was defective because of a "puncture in bag."[1]

Based on the test results and pursuant to 29 M.R.S.A. § 1311–A(2) (Supp.1990), the Secretary of State suspended Abrahamson's license for at least 90 days. After a hearing before a Secretary of State hearing examiner, *see* 29 M.R.S.A. § 1311–A(7) and (8), the hearing examiner found against Abrahamson on all three essential issues, including the issue that is the subject of this appeal: that at the time of Abrahamson's operation of his motor vehicle, he had

---

**1.** There is nothing contained in the certificate to indicate that the test kit was defective in any manner other than the puncture. The certifi-
cate does not state whether the puncture was in the balloon or in the waste or volumetric bags.

0.08% or more by weight of alcohol in his blood. 29 M.R.S.A. § 1311–A(8)(B).[2]

Pursuant to 29 M.R.S.A. § 1311–A(8)(E) and M.R.Civ.P. 80C, Abrahamson appealed to the Superior Court. The Superior Court vacated the Secretary's suspension, concluding that the Secretary could not consider the test result because it was unreliable as a matter of law, and that absent the test result, there was insufficient evidence on which to base a finding that Abrahamson was operating his motor vehicle with 0.08% or more of alcohol in his blood. The Secretary appealed the Superior Court order to this court.

Because the Superior Court acted as an intermediate appellate tribunal, we review directly the record of the administrative hearing, *Mancini v. Secretary of State,* 540 A.2d 117, 118 (Me.1988), and in doing so, determine whether the hearing examiner abused her discretion, committed an error of law, or made findings not supported by substantial evidence in the whole record. *Robinson v. Board of Trustees of Maine State Retirement Sys.,* 523 A.2d 1376, 1378 (Me.1987); 5 M.R.S.A. § 11007(4)(C). We will not substitute our own judgment for that of the hearing examiner merely because the record could support more than one result. *Dodd v. Secretary of State,* 526 A.2d 583, 584 (Me.1987).

The Secretary had the burden of proving by a preponderance of the evidence that Abrahamson was operating his motor vehicle with 0.08% or more by weight of alcohol in his blood. 29 M.R.S.A. § 1311–A(8)(B). In finding that the burden was met, the hearing examiner relied upon the 0.15% test result as well as the testimony of Officer Soper.

■ Evidence is generally admissible before an administrative agency "if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." 5 M.R.S.A. § 9057(2) (1989). 29 M.R.S.A. § 1311–A(8)(C)[3] provides that a signed and sworn certificate of the kind submitted in this case is prima facie proof that all requirements pertaining to the test kit and to the administration of the test have been met, and that the percentage by weight of alcohol in the blood was, at the time the test was taken, as stated in the certificate.[4] Such test results are admissible even if there is a failure to comply with statutory or regulatory provisions unless "the evidence is determined to be not sufficiently reliable." 29 M.R.S.A. § 1312(6). Reflected in that section is a legislative policy to "increase the availability of reliable evidence as to the true state of a driver's sobriety" in general, *State v. Carey,* 412 A.2d 1218, 1221 (Me.1980), and in particular, to allow admission of blood alcohol test results unless they are found to be unreliable. *State v. McConvey,* 459 A.2d 562, 568

---

**2.** 29 M.R.S.A. § 1311–A(8)(B) provides:

The scope of the hearing shall include whether, by a preponderance of the evidence: (1) There was probable cause to believe that the person was operating or attempting to operate a motor vehicle while having 0.08% or more by weight of alcohol in his blood; (2) The person operated or attempted to operate a motor vehicle; and (3) At the time the person had 0.08% or more by weight of alcohol in his blood.

Abrahamson contests only the finding under section 1311–A(8)(B)(3).

**3.** 29 M.R.S.A. § 1311–A(8)(C) provides:

A certificate duly signed and sworn to pursuant to section 1312, subsection 8, shall be prima facie proof of facts stated therein and that the person taking a specimen of blood or breath was authorized by section 1312, subsection 6, that the equipment, chemicals and other materials used in the taking of the blood specimen or breath sample were of a quality appropriate for the purpose of producing reliable test results, that any equipment, chemicals or materials required by section 1312, subsection 6, to be approved by the Department of Human Services were in fact approved, that the sample tested by the person certified under section 1312, subsection 6, was in fact the same sample taken and that the percentage by weight of alcohol in the blood was, at the time the blood or breath sample was taken, as stated in the certificate.

**4.** 29 M.R.S.A. § 1312(8) provides that such a duly signed and sworn certificate has similar prima facie effect in a criminal case. In such a case, however, the defendant can prevent the prima facie effect of the certificate and require that the state produce witnesses to testify to any of the facts to which the certificate constitutes prima facie evidence.

(Me.1983); *see also State v. Jordan*, 575 A.2d 309, 310 (Me.1990).

■ Evidence as to accuracy and reliability of a test result creates issues of fact properly resolved by the factfinder. *State v. Pickering*, 462 A.2d 1151, 1156 (Me. 1983). The hearing examiner, as the factfinder, addressed the accuracy and reliability of the test, and, notwithstanding the "puncture in bag" notation on the certificate, concluded from the evidence presented before her that there was no puncture at the time the officer administered the test, and that the test result was reliable. The record discloses sufficient evidence to support that finding. The officer testified that before and during the test, he examined the kit and found no leaks.[5] Nor did Abrahamson notice any punctures in the bag. Officer Soper testified that he could have caused the puncture by the way he packaged the test kit after the test had been taken and the deep lung air, from which the blood-alcohol level is measured, had already passed through the silica gel.[6] Having determined that the test result was reliable, the hearing examiner was fully justified in admitting into evidence and relying upon that result. The test result, in conjunction with the other evidence tending to show that Abrahamson had ingested alcohol and was affected by it, fully supports the Secretary's finding that Abrahamson was operating his vehicle with 0.08% or more by weight of alcohol in his blood. Because the record could support more than one result is not sufficient reason to disturb the decision of the hearing examiner. *Dodd*, 526 A.2d at 584.

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of order affirming the decision of the Secretary of State.

McKUSICK, C.J., and WATHEN and COLLINS, JJ., concur.

GLASSMAN, Justice, with whom BRODY, Justice, joins, dissenting.

I must respectfully dissent. In this case the defendant's blood-alcohol content was established solely by the result of a breath test set forth in a certificate that on its face raised the issue as to the reliability of that test. The prima facie effect of the certificate having thus been prevented by the certificate itself, the burden was on the State to produce evidence as to the accuracy and reliability of the test. *See* 29 M.R. S.A. § 1312(8) (1978 & Supp.1990). The only evidence before the hearing examiner was the testimony of Officer Soper that he administered the breath test to the defendant at 11:00 p.m., that *prior* to its administration he had *visually* checked the kit and did not see any leaks, and that it was possible that the puncture had occurred while he repackaged the kit. Relying on this testimony, the hearing examiner erroneously found that *after* completion of the breath test "*the officer listened for leaks and found none* " and that the puncture in the bag had occurred after the completion of the test and would not have affected the test itself. Based on those findings, the hearing examiner concluded that the test was reliable. It is clear from this record that the Superior Court properly determined that there was nothing in the record except the speculation of the officer as to when the volumetric bag was damaged and that such evidence is not sufficient to support the conclusion of the hearing examiner that the test was reliable. *See Emerson v. Ham*, 411 A.2d 687, 689 (Me.1980). Accordingly, I would affirm the judgment of the Superior Court.

---

**5.** The officer testified that he gave the kit a visual check and found no leaks. In her oral decision, the hearing examiner made reference to the officer listening for leaks. The discrepancy between the officer's testimony and the hearing examiner's characterization of the officer's examination of the kit does not require that her findings be vacated.

**6.** The silica gel, from which the content of alcohol in the blood is measured, is contained in a vial that is capped upon disassembly.