STATE OF MAINE                                          SUPERIOR COURT

Sagadahoc, ss.                                          AMH-SAG-1/7/2014

JEAN WOLKENS

                    Petitioner

v.                                                      Docket No. BATSC-AP-13-003

STATE OF MAINE SECRETARY OF STATE

                    Respondent

## DECISION AND JUDGMENT

Pursuant to M.R. Civ. P. 80C, Petitioner Jean Wolkens appeals from a decision

of a hearing officer for the Bureau of Motor Vehicles, Office of the Secretary of State,

imposing an administrative suspension of her license for operating under the influence.

Oral argument was held today.

### Background

Petitioner's license was suspended following two incidents of alleged driving

under the influence. In the first incident, on December 16, 2013, officers from the

Topsham Police Department arrived at the scene of a car accident. (R1. Tab 6, 3.) Once

at the scene, officers observed Wolkens, seemingly intoxicated, trying to get her car out

of a ditch. (R1 Tab 6, 4.) Rescue personnel helped Wolkens out of her car and

transported her to Midcoast Hospital. (R1 Tab 6, 4.) At the hospital, Wolkens

consented to the police's request to draw blood. (R1 Tab 6, 5.)

The second incident occurred on March 7, 2013. Topsham Police responded to a

report from a citizen that a woman who had been driving erratically near Woodside

Elementary School. (R2 Tab 6, 4-6.) When officers arrived on the scene, they observed

Wolkens lying on the ground next to her car and impaired to the point that she had difficulty answering questions. (R2 Tab 6, 3.) Wolkens was transported to Midcoast Hospital, and an officer had hospital staff draw a blood sample.[1] (R2 Tab 6, 6.)

After each of these incidents, the police delivered the blood samples to the Maine Health and Environmental Testing Laboratory (MHETL). (R1 Tab 6, 5; R2 Tab 6, 7.) In both instances, MHETL issued certificates of alcohol analysis that stated that lab analyst Stephen Pierce conducted the analysis. (R1 Tab 7, 1; R2 Tab 7, 2.) The certificates from the December and March incidents showed a blood alcohol level of 0.24 grams and 0.29 grams per 100 milliliters of blood respectively. (R1 Tab 7, 1: R2 Tab 7, 2.) Both certificates bear what purports to be Stephen Pierce's signature. Both also state that Mr. Pierce personally appeared before notary public Judy Webber and swore that he was certified to perform blood alcohol analysis and that the results were accurate as reported. (R1 Tab 7, 1: R2 Tab 7, 2.)

The responding police officers forwarded their reports of these incidents to the Secretary of State, and the Secretary of State's office issued a notice of suspension and opportunity for a hearing to Wolkens on April 30, 2013. (R1 Tab 8, 1; R2 Tab 8, 1.) Wolkens requested a hearing, which was scheduled for May 21, 2013.

Prior to the hearing, Wolkens' attorney received a letter from Assistant District Attorney Jonathan Liberman stating:

> It has come to the State's attention that the Certificate of Drug Analysis in this matter may have been notarized in a manner inconsistent with the requirement of personal appearance as detailed in the Secretary of State's "Notary Public Handbook and Resource Guide." Please contact me as soon as possible to discuss the available options for addressing this circumstance.

(R1 Tab 9, 1.)

---

[1] As a result of the December 2012 incident, Wolkens was subject to a bail condition requiring her to submit to random search and testing for possession or use of alcoholic beverages. (R2 Tab 6, 5.)

2

ADA Liberman's letter is dated April 23, 2013, almost a month before the hearing.

At the May 21, 2013 hearing, petitioner Wolkens participated through her attorney, but was not herself present. (R1 Tab 5, 3.) The hearing officer established that the petitioner did not dispute any of the facts in the police reports, and she dismissed the police officer who was there to testify. (R1 Tab 5, 4-5.) However, Wolkens's attorney did dispute the admissibility of the certificates of alcohol analysis based on the Liberman letter. (R1 Tab 5, 4.) The petitioner's argument, in essence, was that, because the certificates of alcohol analysis were not notarized properly, they could not be admitted into evidence. After a lengthy exchange with Wolkens's attorney on the issue (R1 Tab 5, 7-15), the hearing officer accepted the certificates into evidence and relied on them to uphold the license suspension. (R1 Tab 5, 15-16.) In doing so, the hearing officer made it clear that she was not admitting the certificates as *prima facie* evidence of the petitioner's blood alcohol level (R1 Tab 5, 14.), but only as evidence to be considered along with the other evidence in the record. (R1 Tab 5, 14-16.) The hearing officer also distinguished between the criminal context and the administrative context. (R1 Tab 5, 14-16.)

Wolkens appealed to this court on June 19, 2013. The sole issue is whether the certificates were properly admitted into the hearing record.

## Analysis

1. Standard of Review

In an 80C appeal, the Court reviews "the agency's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Nicholson v. Bd. of Licensure in Med.*, 2007 ME 141, ¶ 7, 935 A.2d 660 (quoting *FPL*

3

*Energy Me. Hydro LLC v. Dep't of Envtl. Prot.*, 2007 ME 97, ¶ 13, 926 A.2d 1197). The Court "must affirm findings of fact if they are supported by substantial evidence in the record, even if the record contains inconsistent evidence or evidence contrary to the result reached by the agency." *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 13, 989 A.2d 1128.

2. Admissibility of Certificates

Petitioner argues that the hearing officer erred in admitting the certificates at the hearing because the analyst may not have personally appeared before the notary when signing them. Under Maine's Administrative Procedure Act, a hearing officer shall admit evidence "if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." 5 M.R.S.A. § 9057(2) (2012). The motor vehicle code contains the following provisions with respect to alcohol analysis:

> The following provisions apply to the analysis of blood, breath and urine, and the use of that analysis as evidence.
>> A. A person certified in accordance with section 2524 conducting a chemical analysis of blood, breath or urine to determine an alcohol level or drug concentration may issue a certificate stating the results of the analysis.
>> B. A person qualified to operate a self-contained, breath-alcohol testing apparatus may issue a certificate stating the results of the analysis.
>> C. A certificate issued in accordance with paragraph A or B, when duly signed and sworn, is prima facie evidence that:
>>> (1) The person taking the specimen was authorized to do so;
>>> (2) Equipment, chemicals and other materials used in the taking of the specimen were of a quality appropriate for the purpose of producing reliable test results;
>>> (3) Equipment, chemicals or materials required to be approved by the Department of Health and Human Services were in fact approved;
>>> (4) The sample tested was in fact the same sample taken from the defendant; and
>>> (5) The alcohol level or drug concentration in the blood of the defendant at the time the sample was taken was as stated in the certificate.

29-A M.R.S.A. § 2431(2) (2012).

4

In *Abrahamson v. Secretary of State*, the Law Court found that alcohol "test results were admissible even if there is a failure to comply with statutory or regulatory provisions unless 'the evidence is determined to be not sufficiently reliable.'" *Abrahamson v. Sec'y of State*, 584 A.2d 668 (Me. 1991) (quoting former 29 M.R.S.A. § 1312(6)). The current statute has a similar provision. *See* 29-A M.R.S.A. § 2431(1). In *Abrahamson*, the court considered whether a certificate that included a notation that the testing kit was defective could properly be relied on by the hearing officer. *Abrahamson*, 584 A.2d at 671. The court found that "evidence as to accuracy and reliability of a test result creates issues of fact properly resolved by the factfinder." *Id.* Accordingly, the court reversed the trial court and upheld the suspension of the license. *Id.*

Petitioner relies on *Heal v. Maine Employment Security Commission* to argue that the hearing officer could not rely on the certificates. In *Heal*, the Law Court applied the reliability standard to reports of an employer purportedly conveyed via telephone to an Employment Commission employee. *Heal v. Me. Employment Sec. Com'n*, 447 A.2d 1223, 1225 (Me. 1982). It held:

> The documents on their face do not supply and assurance of reliability. At best each document is a second or third-hand hearsay account of the crucial fact in litigation. The statements are unsworn, and the identity of the informant is uncertain, and the extent of the informant's personal knowledge is unknown. It was error for the Commission to conclude that reasonable people would rely on these documents in the conduct of their serious affairs.

*Heal*, 447 A.2d at 1226. Unlike in *Heal*, however, the identity of the certifying technician is known and the analyst is not an interested party. Moreover, petitioner does not challenge the analyst's ability to conduct blood alcohol analyses nor does she otherwise dispute the accuracy of the tests. (R1 Tab 5, 7-8.) Thus, petitioner's reliance on *Heal* is misplaced.

5

Other cases instruct that administrative hearing officers may rely on unsworn documents as long as they are otherwise reliable. *See State v. Jones*, 2012 ME 126, ¶ 38, 55 A.3d 432 (allowing hearsay reports where "there is no suggestion that the staff members were biased or had a motive to fabricate, or that there was some other reason to treat the substantive reliability of the reports as highly suspect."); *Elvin v. City of Waterville*, 573 A.2d 381, 383-84 (Me. 1990) ("In performing their duties administrative tribunals regularly and properly rely on hearsay.").

In the present case, the hearing officer agreed with the petitioner that the notarization issue raised in the Liberman letter meant that the certificates could not be deemed "duly signed and sworn" for purposes of qualifying to be admitted as *prima facie* evidence of the petitioner's blood alcohol content. The hearing officer also agreed that the certificates likely would be inadmissible, at least without testimony from the analyst, in a criminal proceeding. However, the hearing officer reasonably determined that, notwithstanding the possible issue with notarization, the certificates were sufficiently reliable to be admitted as evidence, albeit not as *prima facie* evidence, in the administrative proceeding.

For these reasons, the court affirms the Secretary of State's decision at issue and denies the petitioner's appeal.

IT IS ORDERED:

Petitioner's appeal is denied. The decision of the Secretary of State, Bureau of Motor Vehicles, suspending Petitioner Jean Wolkens's license to operate motor vehicles in Maine effective May 22, 2013, based on reported operation under the influence on December 16, 2012 and March 7, 2013, is hereby affirmed. Judgment shall be entered in favor of the Respondent State of Maine, Secretary of State.

6

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Decision and Judgment by reference in the docket.

Dated January 7, 2014

A. M. Horton
Justice, Superior Court

7

Date Filed 06/19/13          Sagadahoc County          Docket No. AP-13-03

Action: 80C Appeal


Jean Wolkens                    vs.          State of Maine,
                                             Secretary of State Matthew Dunlap,
                                             Bureau of Motor Vehicles


Plaintiff's Attorney                         Defendant's Attorney

Robert C. Andrews, Esq                       Donald W Macomber, AAG
PO Box 17621                          6 State House Station
Portland, Maine 04530                        Augusta, Maine