MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 168
Docket:       BCD-19-12
Argued:       October 7, 2019
Decided:      December 19, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

JAMES BLANCHARD et al.

v.

TOWN OF BAR HARBOR

MEAD, J.

[¶1]   James Blanchard and a number of other individuals[1] whose properties have views overlooking the waters adjacent to the Town of Bar Harbor's Ferry Terminal Property appeal from a judgment of the Business and Consumer Docket (*Murphy, J.*) in favor of the Town on appellants' complaint seeking a declaratory judgment that the Town's Zoning Ordinance Amendment is invalid.  Because we conclude that the property owners have failed to demonstrate a particularized injury and have commenced this action prematurely, we vacate the judgment on standing and ripeness grounds and

---

[1]  William B. Ruger, Jr., Trustee of the 1999 William B. Ruger, Jr. Revocable Trust; Jonathan Eno and Karen Gilfillan; Arnold and Margaret Amstutz; Mark Brady; Douglas Denny-Brown and Andrea Denny-Brown; William and Weslie Janeway; Pamela McCullough; James Paterson and Patrice McCullough; Lawrence and Susan Stahlberg; William Clendaniel; Harold Clark; Wendy Gamble; Oakley and Frances Johnson; and Robert Worrell.

remand for dismissal without prejudice. As such, we do not reach the merits of the property owners' claims that the Amendment is inconsistent with state law and that the court erred in deferring to the Department of Environmental Protection's order approving the Amendment.

## I. BACKGROUND

[¶2] We draw the following facts from the parties' stipulated record. *See BCN Telecom, Inc. v. State Tax Assessor*, 2016 ME 165, ¶ 3, 151 A.3d 497.

[¶3] Pursuant to the Bar Harbor Town Charter, the Town Council placed a warrant article on a referendum ballot containing the Zoning Amendment (Article 12) and a competing measure (Article 13) to be addressed at a Town meeting on June 13, 2017. At that Town meeting, residents voted to pass the Zoning Amendment (Article 12) and rejected the competing measure (Article 13).

[¶4] The Amendment changed the Town's Land Use Ordinance in three ways: (1) it created a new "Shoreland Maritime Activities District" that would apply to the Ferry Terminal Property (Tax Map 231, Lot 004), (2) it added definitions for "passenger terminal" and "parking deck," and (3) it amended the zoning map by applying the Shoreland Maritime Activities District to the Ferry Terminal Property. *See* Bar Harbor, Me., Land Use Ordinance §§ 129-49.3,

125-109 (June 13, 2017). The parties agree that the intent underlying the Amendment was to allow substantially larger cruise ships to use the Ferry Terminal Property.

[¶5] On July 18, 2017, the Department of Environmental Protection (DEP) issued an order approving the Amendment.[2] The property owners, who own real property in Bar Harbor, Sorrento, and Hancock, subsequently filed a complaint seeking a declaratory judgment that the Amendment was invalid. *See* 14 M.R.S. § 5954 (2018). The parties submitted the matter to the Business and Consumer Docket on agreed statements of fact. The BCD entered judgment for the Town, concluding that (1) the property owners' declaratory judgment request presented "a genuine controversy ripe for judicial review," (2) only the Bar Harbor property owners had standing to challenge the Amendment, (3) the Amendment was in harmony with the Town's comprehensive plan, (4) the DEP order was entitled to "considerable deference," and (5) the Amendment was not inconsistent with DEP regulations.

[¶6] The property owners raise two arguments on appeal, *see* 14 M.R.S. § 5959 (2018): (1) the court erred in deferring to the DEP's order, and (2) the

---

[2] Amendments to municipal ordinances are not effective unless they are approved by the DEP. *See* 38 M.R.S. § 438-A(3) (2018).

4

Amendment is inconsistent with state statutes and regulations. We conclude that the property owners lack standing to challenge the Town's amendment of its Land Use Ordinance and that their claim is not ripe. Thus, we do not reach their substantive arguments. We vacate the court's judgment and remand for entry of an order of dismissal without prejudice.

## II. DISCUSSION

[¶7] Our analysis begins by considering the threshold issues of standing and ripeness. Each presents a potential bar to action by us.

### A. Standing

[¶8] We review standing de novo as a question of law. *JPMorgan Chase Bank v. Harp*, 2011 ME 5, ¶ 7, 10 A.3d 718. In the trial court, the Town argued that the property owners in towns other than Bar Harbor lacked standing, and the court agreed. The trial court stopped short of denying standing to the Bar Harbor landowners, stating that the "Town implicitly concedes that this [is] a sufficient injury to confer standing on the four Plaintiffs who own property in Bar Harbor under *Buck* [*v. Town of Yarmouth,* 402 A.2d 860 (Me. 1979)]." Because we may raise the issue of standing sua sponte, *Collins v. State*, 2000 ME 85, ¶ 5, 750 A.2d 1257, we are not bound by the court's conclusion

that the Town "implicitly concede[d]" that the Bar Harbor property owners have standing.

[¶9] Our cases have allowed anticipatory declaratory judgment actions brought by "those persons engaged in a *business directly affected by a statute*." *James v. Inhabitants of the Town of W. Bath*, 437 A.2d 863, 865 (Me. 1981) (emphasis added) (quotation marks omitted); *see also Annable v. Bd. of Envtl. Prot.*, 507 A.2d 592, 593, 596 (Me. 1986) (concluding that, although there was not yet a "formal invocation of the licensing process . . . [nor] enforcement action," the plaintiff, who had sought and received approval from the Town for multiple subdivision plans, was seeking a declaration of his own legal rights to build, "which [were] directly affected by [the statute]").

[¶10] Here, the property owners face no similar immediate threat to their own property or business interests, nor are their alleged interests captured under a different exception allowing anticipatory challenges. *See, e.g.*, *James*, 437 A.2d at 865 ("[W]hen declaratory relief is available as a procedural matter, a person whose activities are regulated with the imposition of *criminal penalties* for failure to comply has standing to challenge such regulation and need not undergo a criminal prosecution before being able to seek relief."

6

(emphasis added) (citing *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 62 (1976); *Doe v. Bolton*, 410 U.S. 179, 188 (1973))).

[¶11]   The property owners cite a number of other cases for the proposition that we allow challenges to a municipal ordinance even before the claimants have suffered harm, but in those cases, plaintiffs alleged a tangible and inevitable harm.  In *Ace Tire Co. v. Mun. Officers of City of Waterville*, the plaintiff had paid the challenged annual license fees to the City under protest for years.  302 A.2d 90, 94 (Me. 1973).  In *Delogu v. City of Portland*, the property-owning plaintiffs had standing as taxpayers to challenge a municipal property tax change.  2004 ME 18, ¶¶ 1, 8, 843 A.2d 33.

[¶12]   The property owners also invoke our long-held preventive-remedial doctrine of standing to argue that their action is preventive in nature and thus they do not need to demonstrate a particularized injury.[3]   The preventive-remedial doctrine allows a plaintiff to sue a

---

[3] At the outset, we note that standing and ripeness may be inextricably intertwined in this context. As we observed in *Lehigh v. Pittston Co.*, tension exists between the preventive-remedial doctrine of standing, which encourages anticipatory challenges, and the doctrine of ripeness, "which mandates restraint."  456 A.2d 355, 358 n.11 (Me. 1983).  We have questioned the continuing validity of the preventive-remedial doctrine.  *See id.*  However, we have continued to apply the doctrine in recent decisions, *see Petrin v. Town of Scarborough*, 2016 ME 136, ¶ 20, 147 A.3d 842, and we do not reconsider the doctrine's viability in this opinion; *see McCorkle v. Town of Falmouth*, 529 A.2d 337, 338 n.2 (Me. 1987) ("Because we have no difficulty concluding here that the relief sought was preventive, we defer to another day acting upon the invitation . . . to reconsider the viability of the [doctrine].").

municipality "to seek *preventive* relief against a threatened public wrong" without demonstrating a particularized injury. *Buck*, 402 A.2d at 862. Where the relief sought is "remedial" rather than "preventive," however, the plaintiff must demonstrate a particularized injury, in other words, an injury that does not affect all members of the town equally. *Id.*; *see Petrin v. Town of Scarborough*, 2016 ME 136, ¶¶ 20-21, 147 A.3d 842; *Lehigh v. Pittston Co.*, 456 A.2d 355, 358 (Me. 1983). Where a citizen lacks a particularized injury, we have concluded that the Attorney General is a proper plaintiff to initiate an action against a municipality to remedy a public wrong. *Buck*, 402 A.2d at 863 ("Thus, denial of standing to plaintiffs does not leave the voters of the Town of Yarmouth without a remedy for a public wrong suffered by all voters equally, if any exists.").

[¶13] Because the property owners are seeking relief for a "wrong" that has already occurred, the enactment of the Amendment, we conclude that this case fits squarely within the line of cases in which plaintiffs have requested remedial relief. *See Lehigh*, 456 A.2d at 359 n.12 (collecting case law for actions deemed "remedial"); *see also Petrin*, 2016 ME 136, ¶ 20, 147 A.3d 842 (relief from past tax assessments deemed "remedial"). Because they seek remedial relief, the property owners must show that they suffer a particularized injury.

[¶14]  The property owners have failed to demonstrate a particularized injury.  Based upon the stipulated record, the only potential injury they allege is that they "own and use residentially improved properties" in Bar Harbor, Hancock, and Sorrento "with direct views over the inner Bar Harbor ocean waters adjacent to the Ferry Terminal Property."  We have applied a "minimal" threshold for standing where the challenging party is an abutter.  *See Roop v. City of Belfast*, 2007 ME 32, ¶ 8, 915 A.2d 966.  However, nothing in the stipulated record indicates that any of these property owners is an abutter.  Further, even if the property owners had established themselves as abutters, they have not met the minimal standing threshold for abutters upon these facts.  The stipulated record contains no evidence demonstrating the tangible effect on the property owners' views.  This is perhaps unsurprising because detailing a negative effect on a view undoubtedly proves challenging when there is not yet a concrete proposal threatening that view.  *See infra* ¶¶ 19-22.

[¶15]  In *Harrington v. Inhabitants of Town of Kennebunk*, we concluded that "the potential for obstruction of view is an improper subject for judicial notice" as a matter of "evidentiary propriety" because whether a structure will obstruct a view "is clearly neither a matter of uncontested common knowledge nor capable of certain verification."  459 A.2d 557, 560 (Me. 1983).  Thus, we

indicated that evidence of a blocked view is necessary to demonstrate a particularized injury that is based on views. *See id.* Accordingly, because the property owners have failed to demonstrate particularized injuries in their request for remedial relief, we vacate the judgment issued by the BCD and remand for entry of dismissal without prejudice.

B.      Ripeness

[¶16]   Although the property owners lack standing to pursue this challenge to the changes to the Land Use Ordinance upon this record, we address also the issue of ripeness for the benefit of the parties and the court in the event that a subsequent challenge to the ordinance is tendered.

[¶17] We review ripeness de novo as a question of law. *Johnson v. City of Augusta*, 2006 ME 92, ¶ 7, 902 A.2d 855. The doctrine of ripeness prevents "judicial entanglement in abstract disputes, avoid[s] premature adjudication, and protect[s] agencies from judicial interference until a decision with concrete effects has been made." *Id.*

[¶18] The BCD judgment cited *Sold, Inc. v. Town of Gorham*, which states, "The declaratory judgment law does permit anticipatory challenges to a regulation or ordinance to resolve a dispute regarding a planned action, before the matter actually proceeds and the challenged ordinance is applied to the

detriment of the plaintiffs." 2005 ME 24, ¶ 14, 868 A.2d 172. The Declaratory Judgments Act (DJA) provides,

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

14 M.R.S. § 5954.

[¶19] The DJA gives plaintiffs whose rights *are affected* the right to bring declaratory action. Here, the property owners' "rights, status or other legal relations" are not yet affected. As we have noted above, although the Land Use Ordinance has been modified, and the parties agree that the changes were intended to improve the ferry terminal to accommodate cruise ships, there is no currently planned action for construction or development in the Ferry Terminal Property.

[¶20] In our case of first impression examining the DJA, we observed that the purpose of the DJA is "not to enlarge the jurisdiction of the courts . . . but to provide a more adequate and flexible remedy in cases where jurisdiction already exists." *Me. Broad. Co. v. E. Tr. & Banking Co.,* 142 Me. 220, 223, 49 A.2d 224 (1946). Since then, we have maintained that the DJA "may be

invoked only where there is a genuine controversy." *Patrons Oxford Mut. Ins. Co. v. Garcia*, 1998 ME 38, ¶ 4, 707 A.2d 384. "A genuine controversy exists if a case is ripe for judicial consideration and action." *Id.* Ripeness is a two-prong analysis: (1) the issues must be fit for judicial review, and (2) hardship to the parties will result if the court withholds review. *Id.* We conclude that the property owners' claim is not ripe.

[¶21] The property owners fail each ripeness prong. First, in order to be fit for review, the controversy must pose a "concrete, certain, or immediate legal problem." *Johnson v. Crane*, 2017 ME 113, ¶ 10, 163 A.3d 832 (quotation marks omitted). Here, all that has taken place is the passage of the Amendment. The record is devoid of any suggestion that the Town has addressed or approved any application for a permit for construction or development at the Ferry Terminal Property. Any challenge that the property owners make at this point is necessarily speculative as to the extent of development, improvement, or construction that might occur, and thus the sort of injury they might suffer. The mere fact that the Amendment allows accessory uses—subject to review by the Town permitting authority—in the new Shoreland Maritime Activities District, including a bank, farmers' market, hotel, multifamily dwelling, or restaurant, among other possibilities, does not ripen appellants' challenge

against any conjectural future development. *See* Bar Harbor, Me., Land Use Ordinance § 125-49.3(C)(2).

[¶22] Second, like the fitness prong, the hardship prong "requires adverse effects on the plaintiff, . . . and speculative hardships do not suffice to meet [the] requirement." *Johnson v. City of Augusta*, 2006 ME 92, ¶ 8, 902 A.2d 855 (citations omitted); *see Clark v. Hancock Cty. Comm'rs*, 2014 ME 33, ¶ 20, 87 A.3d 712. Because no building or development permits have been sought, the property owners' injury is purely speculative at this point. In simple terms, the property owners' situation before and after our review would remain the same, thus rendering this challenge to the ordinance not ripe for judicial review.[4]

The entry is:

> Judgment vacated. Remanded for the entry of
> judgment of dismissal without prejudice.

---

[4] During oral argument, the Town agreed that the property owners, if they are able to demonstrate appropriate standing, would have the ability to challenge the enactment of the Land Use Ordinance in later proceedings relating to applications for permits for construction or development on the Ferry Terminal Property.

William H. Dale, Esq. (orally), Mark A. Bower, Esq., and Benjamin T. McCall, Esq., Jensen Baird Gardner & Henry, Portland, for appellants James Blanchard et al.

Edmond J. Bearor, Esq., Joshua A. Randlett, Esq., and Jonathan P. Hunter, Esq. (orally), Rudman Winchell, Bangor, for appellee Town of Bar Harbor

Business and Consumer Docket docket number CV-2017-52
FOR CLERK REFERENCE ONLY