MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:      2023 ME 12
Docket:        Yor-22-186
Submitted
  On Briefs:   December 7, 2022
Decided:       February 7, 2023

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.


KEEGAN J. FAIRFIELD

v.

MAINE STATE POLICE


JABAR, J.

[¶1]  Keegan J. Fairfield appeals from an order entered by the Superior Court (York County, *Mulhern, J.*) affirming the Maine State Police's (MSP) decision to withhold documents Fairfield sought pursuant to a Freedom of Access Act (FOAA) request.  *See* 1 M.R.S. §§ 400-414 (2022).[1]  The trial court correctly interpreted FOAA and did not err in its review of the factual record, and, therefore, we affirm the order.

---

[1] We cite the current statutes because, although FOAA has been amended since the MSP declined to release certain requested materials to Winchester, the amendments are not relevant to the present case.  *See, e.g.*, P.L. 2021, ch. 313, § 5 (effective Oct. 18, 2021) (codified at 1 M.R.S. § 412(1) (2022)).

# I. BACKGROUND

## A.    FOAA Request

[¶2]  On May 7, 2020, Fairfield submitted a FOAA request to the MSP, seeking (1) documentation of MSP Crime Laboratory protocols including standing operating procedures; (2) DNA contamination logs; (3) quality assurance records; and (4) quality assurance manuals dating back to 2008.  The MSP acknowledged receipt of the request later that day.

[¶3]  The MSP distributed files to Fairfield on September 28, 2020, and November 11, 2020.  On December 11, 2020, the MSP notified Fairfield that it was denying his request as to certain documents that fell within the four requested categories.  Specifically, the MSP withheld the DNA contamination logs and three types of quality assurance records: (1) corrective action forms; (2) testimony review forms; and (3) drying locker logs.[2]  As of March 4, 2021, the MSP had provided approximately 6,800 pages of requested materials in full, as well as forty partially redacted pages.  The MSP withheld approximately 2,700 pages, concluding that they were confidential under state law.

---

[2]  The MSP withheld some of the corrective action forms, all the testimonial review forms, and portions of each drying locker log.

**B.     Proceedings Below**

[¶4]  On December 11, 2020, Fairfield appealed the MSP's decision to redact and withhold certain documents to the Superior Court.  *See* 1 M.R.S. § 409(1).  In an order dated March 4, 2021, the court (*Fritzsche, A.R.J.*) ordered the withheld documents to be presented for *in camera* review.  Additionally, the court scheduled a hearing that was limited, "[u]nless the reviewing Justice decides otherwise, . . . to answering any questions the Justice may have about the documents and an inquiry into whether the defendant has made a comprehensive search for relevant documents and what, if any, types of documents were neither disclosed nor subject to *in camera* [review]."

[¶5]  Fairfield submitted a witness list for the hearing, revealing that the witnesses were expected to testify on alleged deception and data accuracy issues at the MSP Crime Laboratory.  At a status conference on July 29, 2021, the court (*Mulhern, J.*) determined that this testimony would go beyond the scope of the hearing and vacated the March 4, 2021, scheduling order.  On August 2, 2021, Fairfield filed a motion to reconsider the court's order vacating the earlier scheduling order.  The court denied the motion and issued a new scheduling order, stating that it would rely exclusively on briefs, an *in camera* review, affidavits that the parties were invited to file, and an exceptions log

prepared by the MSP as the factual record. The court reserved the right to hold a hearing after reviewing the submitted materials.

[¶6] Fairfield submitted his brief and additional materials on January 3, 2022. The brief was ninety-six single-spaced pages, and none of the materials that Fairfield sought to introduce to the court were in the form of affidavits. The MSP filed a reply brief on February 2, 2022, along with affidavits concerning the nature of the withheld documents, why the documents were withheld, and operations of the MSP Crime Laboratory generally.

[¶7] The court issued an order denying Fairfield's FOAA appeal on May 26, 2022, and stated that it did not consider Fairfield's additional materials as part of the evidentiary record. Fairfield timely appealed. M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶8] On appeal, Fairfield challenges the court's determination that the DNA contamination logs and quality assurance records withheld by the MSP are confidential under state law.[3]

---

[3] Fairfield also argues on appeal that the court's decision to vacate the March 4, 2022, scheduling order and to cancel the hearing violated the "law of the case" doctrine. The scheduling order was explicitly provisional, and provisional orders are not subject to the "law of the case" doctrine. *See Raymond v. Raymond*, 480 A.2d 718, 721 (Me. 1984).

## A.      Standard of Review

[¶9]  In reviewing whether a government entity complied with FOAA, we review the trial court's factual findings for clear error and its interpretation of FOAA de novo.  *See Anctil v. Dep't of Corr.*, 2017 ME 233, ¶ 5, 175 A.3d 660.  Any exceptions to FOAA's disclosure requirement are strictly construed to promote FOAA's underlying policies and purposes.  *Id.*  "When an agency denies a FOAA request, the agency bears the burden of establishing that there is just and proper cause for the denial."  *Preti Flaherty Beliveau & Pachios LLP v. State Tax Assessor*, 2014 ME 6, ¶ 10, 86 A.3d 30.

[¶10]  We have not yet had the occasion to announce a standard of review in instances where a party submits a FOAA request that implicates a large quantity of records.  In announcing a standard of review today, we look to federal interpretation of the Freedom of Information Act (FOIA) for guidance.  *See Blethen Me. Newspapers, Inc. v. State*, 2005 ME 56, ¶ 13, 871 A.2d 523.

[¶11]  When confronted with a significant volume of withheld and redacted documents, federal courts have interpreted FOIA to grant trial courts broad discretion in their creation and review of a factual record.  *See, e.g.*, *Montgomery v. IRS*, 40 F.4th 702, 713 (D.C. Cir. 2022) ("We have explained on numerous occasions that the decision whether to perform *in camera* inspection

6

is left to the broad discretion of the trial court judge." (quotation marks omitted)). If a trial court orders the submission of documents for *in camera* review, "it need not inspect each and every document in question, [and] many courts tak[e] the position that an in camera examination in the nature of a spot check or random sample of documents is sufficient to determine the propriety of the withholding of records." Lewis J. Heisman, Annotation, *Power of court under 5 USCS § 552(a)(4)(B) to examine agency records in camera to determine propriety of withholding records*, 60 A.L.R. Fed. 416 § 2 (1982); *see also NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) ("The *in camera* review provision is discretionary by its terms, and is designed to be invoked when the issue before the District Court could not be otherwise resolved; it thus does not mandate that the documents be individually examined in every case.").[4]

[¶12] Accordingly, where a requesting party challenges a trial court's determination that a large number of requested documents are confidential, our approach is two-fold. First, we analyze de novo whether the trial court has

---

[4] In announcing our standard of review, we acknowledge that FOIA and FOAA are distinct from one another. However, both statutes provide factfinders with discretion to create a factual record. *See* 5 U.S.C.S. § 552(a)(4)(B) (LEXIS through Pub. L. No. 117-242); *Dubois v. Dep't of Env't. Prot.*, 2017 ME 224, ¶ 10, 174 A.3d 314 (holding that trial courts have "discretion to determine the process necessary for the resolution of disputed facts, giving due consideration to the efficacy, costs, and time required for each method of presentation of evidence").

created a sufficient factual record upon which it can determine whether the withheld documents are confidential.[5]  Second, we independently review the factual record, including any documents submitted for *in camera* review, to ensure that the court did not commit clear error in its description and categorization of the withheld documents.  *Cf. Havemann v. Colvin*, 537 F. App'x 142, 146 (4th Cir. 2013) ("[W]here FOIA is involved, [appellate] review is limited to determining (1) whether the district court had an adequate factual basis for the decision rendered and (2) whether upon this basis the decision reached is clearly erroneous." (alterations and quotation marks omitted)).  We may satisfy this second step by spot-checking a random selection of any withheld documents submitted for *in camera* review and reviewing other components of the factual record.

**B.    Statutory Framework**

[¶13]   A person has the right to inspect any public record unless otherwise provided by statute.   1 M.R.S. § 408-A(2).   Records that are

---

[5]   Although Fairfield challenges the adequacy of the factual record on appeal, the court here created a factual record nearly identical to the one we approved in *Dubois v. Department of Agriculture, Conservation and Forestry*: an *in camera* review of the withheld documents, an exceptions log, the parties' briefs, and any additional affidavits submitted by the parties.  2018 ME 68, ¶¶ 11-12, 185 A.3d 743.  Accordingly, we find that the court here "creat[ed] a fair process for all of the parties to present information that . . . create[d] a meaningful and sufficient record on which the court could adjudicate the FOAA claim."  *Id.* ¶ 12.

8

designated confidential by statute are not public records under FOAA, 1 M.R.S. § 402(3)(A), and confidential information may be redacted from records that would otherwise be subject to disclosure, *see Doyle v. Town of Falmouth*, 2014 ME 151, ¶ 9, 106 A.3d 1145.

[¶14]  The MSP contended, and the trial court agreed, that three different statutes rendered certain withheld documents confidential: 16 M.R.S. §§ 801-809 (2022) (Intelligence and Investigative Record Information Act),[6] 25 M.R.S. §§ 1571-1578 (2022) (DNA Data Base and Data Bank Act), and 5 M.R.S. § 7070 (2022) (personnel records provision).

### 1.    Intelligence and Investigative Record Information Act

[¶15]   A record that contains intelligence and investigative record information is confidential if there is a reasonable possibility that public release or inspection of the record would result in an unwarranted invasion of privacy. 16 M.R.S. § 804(3).  In *Blethen Maine Newspapers*, *Inc.,* 2005 ME 56, ¶ 14, 871 A.2d 523, we applied a three-part test to determine if disclosure would result in an unwarranted invasion of privacy, considering "(1) the personal privacy

---

[6] We cite the current statutes because, although the Intelligence and Investigative Record Act has been amended since the MSP denied portions of Fairfield's FOAA request, the amendments are not relevant in the present case.  *See, e.g.*, P.L. 2021, ch. 353, § 2 (effective Oct. 18, 2021) (codified at 16 M.R.S. § 806-A (2022)).

interests . . . in maintaining the confidentiality of the records sought by [the requesting party]; (2) the public interest supporting disclosure of the records; and (3) the balancing of the private and public interests."

[¶16]   Intelligence and investigative records often contain sensitive personal information that may not have been verified and "[f]ew people wish to be publicly associated with investigations of alleged criminal conduct, whether as a perpetrator, witness, or victim." *Id*. ¶ 15. Accordingly, individuals referenced in intelligence and investigative records have a significant interest in keeping their identities private. *See id*.

[¶17]   As to the public interest prong, the requesting party must demonstrate that the information sought is likely to advance a significant public interest. *Id.* ¶ 33. We have previously acknowledged, however, that the public has a significant interest in "information that might document governmental efficiency or effectiveness . . . [and] information documenting governmental negligence or malfeasance." *Id.* ¶ 32.

### 2.    DNA Data Base and Data Bank Act

[¶18]  "All DNA records are confidential and may not be disclosed to any person or agency unless disclosure is authorized by [25 M.R.S. § 1577]." 25 M.R.S. § 1577(1).  Any DNA identification information obtained from DNA

analysis is a "DNA record."[7]  25 M.R.S. § 1572(5).  DNA records with personal identifying information may be released only to certain law enforcement agencies and personnel, medical examiners, and any individual who seeks their own DNA record.  25 M.R.S. § 1577(2), (4).

### 3. Personnel records provision

[¶19]  State employee records containing performance evaluations are confidential in their entirety.  *See* 5 M.R.S. § 7070(2)(B).  Similarly, employee records containing "information or materials that may result in disciplinary action" are confidential and may not be disclosed, if at all, until a final written decision relating to disciplinary action is issued.  *Id.* § 7070(2)(E); *cf. Lewiston Daily Sun v. City of Lewiston*, 596 A.2d 619, 621 (Me. 1991).[8]  The provision relating to disciplinary action exempts only records relating to potential or

---

[7] Fairfield appears to assert that a DNA record contains "identification information" only if a lay person can use the record to identify its subject.  We have previously held, however, that the statute's safeguards are meant to "minimize the risk that personally identifiable information can be inappropriately mined *or* released."  *State v. Hutchinson*, 2009 ME 44, ¶ 25, 969 A.2d 923 (emphasis added).  Thus, the statute is intended to protect information that, if released to the public generally, *could* be used to identify the DNA record's subject.  Accordingly, we are unpersuaded by Fairfield's proposed reading of the DNA Data Base and Data Bank Act.

[8] In *Lewiston Daily Sun v. City of Lewiston*, 596 A.2d 619 (Me. 1991), we interpreted a statute that contains nearly identical language to the personnel records provision at issue here, but that applies to *municipal* workers instead of state workers.  *See* 30-A M.R.S.A. § 2702 (Pamph. 1990).  The municipal records law has since been amended and is intended to "parallel the same [privacy] protections provided for state employees."  L.D. 1790, Summary (129th Legis. 2019); *see* P.L. 2019, ch. 451, § 3 (effective Sept. 19, 2019) (codified at 30-A M.R.S. § 2702 (2022)).

actual disciplinary action, *Me. Today Media, Inc. v. City of Portland*, No. AP-13-05, 2013 Me. Super. LEXIS 144, at *6 (June 24, 2013), and the exception must be narrowly drawn and does not protect all information pertaining to misconduct, *Guy Gannett Publ'g Co. v. Univ. of Me.*, 555 A.2d 470, 472 (Me. 1989).

## C.    Withheld Documents

[¶20]   We now address the two types of documents that Fairfield contends should have been disclosed to him: DNA contamination logs and quality assurance records.

### 1.    DNA contamination logs

[¶21]    DNA contamination logs track all instances of identified contamination of DNA samples, and the MSP withheld these records in their entirety.   The withheld documents contain highly sensitive information including the identification of suspects or victims, the nature of the offense, and "evidence, such as . . . anal or vaginal swab[s] . . . [and] body fluids."

[¶22]  The MSP went through painstaking efforts to create an exceptions log detailing the various reasons for each contamination log's confidentiality. Upon our random review of the withheld DNA contamination logs, we hold that the court did not err in its determination that the disclosure of certain contamination logs would lead to an unwarranted invasion of privacy.  Indeed,

12

it is difficult to imagine information more sensitive than the genetic information contained in the withheld contamination logs. *See Blethen Me. Newspapers*, *Inc.*, 2005 ME 56, ¶ 15, 871 A.2d 523 ("[W]hen the subject of a law enforcement record is a private individual, the privacy interest protected by the privacy exception is at its apex."). While we agree with Fairfield that there is a strong public interest in the release of "information as to the integrity and credibility of [the MSP's] work," we cannot say that the court clearly erred in determining that the private interest in keeping the contamination logs confidential outweighed the public interest in their release.[9]

[¶23] The MSP also relied on the DNA Data Bank and Data Base Act to withhold certain contamination logs. Our review of the withheld documents confirms that the relevant contamination logs contain DNA identification information. Because the presence of DNA identification information renders the *entirety* of the record confidential, the court did not err in relying on the DNA Data Base and Data Bank Act to determine that the implicated contamination logs were confidential. *See* 25 M.R.S. § 1577.

---

[9] Fairfield argues that the court improperly interpreted the Intelligence and Investigative Record Information Act to mean that "any intelligence and investigate record information is confidential." Contrary to Fairfield's contention, the court noted the "sensitive" nature of the information contained in the documents and referenced its responsibility to "balance the need for transparency of government action with the protection of sensitive information."

## 2.     Quality assurance records

[¶24]   The quality assurance records consist of three types of forms withheld by the MSP: (a) corrective action forms, (b) testimony review forms, and (c) drying locker logs.

### a.     Corrective action forms

[¶25]   An MSP affidavit states that corrective action forms "are used to identify possible nonconformances in the laboratory . . . [including] inaccurate analyses or methods, inaccurate reports, instrument malfunction and non-fulfillment of an accreditation or laboratory policy."  After being filed, the lab's quality manager reviews the corrective actions forms, evaluates the employee's work, and decides whether remedial measures are appropriate.  Further, corrective action forms document employee performance.  The forms often contain case-specific information—including the nature of the contamination, the name of the alleged victim or suspect, and the name of the law enforcement officer—and may identify any relevant employees by name or position.  Here, the corrective action forms were withheld only where they addressed the performance of staff, and the case-specific identification information was redacted on the remaining records.

14

[¶26]  Our review of a sample of the withheld corrective action forms confirms that the court did not err in its determination that the withheld corrective action forms were confidential.  Because the documents clearly contain information that may result in disciplinary action, *see* 5 M.R.S. § 7070(2)(E), and are used to document employee performance, *id.* § 7070(2)(B), each of the corrective action forms pertaining to *employee* performance is confidential in its entirety.  Because the MSP primarily withheld documents pertaining to employee performance, the court did not err in deeming the withheld documents confidential.[10]

[¶27]  Similarly, the court did not err in classifying the redacted case information as confidential.  Following the balancing test set forth in *Blethen Maine Newspapers, Inc.*, 2005 ME 56, ¶ 14, 871 A.2d 523, we are satisfied that release of the suspect and victim names would result in an unwarranted invasion of privacy, particularly because it is unclear how the release of victims' names would advance the public interest asserted by Fairfield.  *See Dean v. State*

---

[10] Two additional corrective actions forms were withheld solely out of concerns for lab security, 16 M.R.S. §§ 803(7), 804(7) (2022), and one more was withheld solely under the DNA Data Base and Data Bank Act, 25 M.R.S. § 1577(1) (2022).  Having reviewed each of these three documents individually, we conclude that the trial court did not clearly err in categorizing each as confidential under either the DNA  Data Base and Data Bank  Act or the Intelligence and Investigative Record Information Act.

*Fire Marshal's Off.*, No. CV-2020-129, 2021 Me. Super. LEXIS 35, *8 (Feb. 19, 2021).

### b.     Testimony review forms

[¶28]   Testimony review forms evaluate and document whether MSP Crime Lab employee testimony is technically accurate, professionally delivered, and easy to understand.  Each of these documents were withheld under the personnel records provision.  *See* 5 M.R.S. § 7070(2)(B).

[¶29]   Upon our random inspection of the testimony review forms, we conclude that the court did not error in determining that the withheld documents were confidential.   The testimony review forms were fairly characterized as performance evaluations and, consequently, are entirely confidential under the personnel records provision.

### c.     Drying locker logs

[¶30]   Drying lockers are secure locations to store and dry out wet evidence, such as evidence soaked in bodily fluids.  Drying locker logs track "receipt and removal of evidence from the lockers."  The MSP released all the drying locker logs to Fairfield, but it redacted the names of the suspects and victims associated with the evidence, concluding that release of the names

would produce an unwarranted invasion of privacy, rendering the names confidential under Intelligence and Investigative Record Information Act.

[¶31] Upon our review of the documents, we are satisfied that release of the withheld names would result in an unwarranted invasion of privacy. Because "[f]ew people wish to be publicly associated with investigations of alleged criminal conduct, whether as a perpetrator, witness, or victim," the individuals whose names were redacted from the drying locker logs have a strong personal privacy interest in preventing their names from being released to the public. *Blethen Me. Newspapers, Inc.*, 2005 ME 56, ¶ 15, 871 A.2d 523. Additionally, as with the corrective action forms, it is unclear how releasing the names of the suspects and victims would advance the public interest asserted by Fairfield. Accordingly, we find that the court did not err in finding that the suspects' and victims' names on the drying locker logs were confidential under the Intelligence and Investigative Records Act.

### III. CONCLUSION

[¶32] The court did not err in its creation of a factual record. Following our independent review of the factual record, we further hold that the court did not clearly err in determining that the MSP met its burden to show that the withheld records were confidential.

The entry is:

Judgment affirmed.

---

Amy L. Fairfield, Esq., Fairfield & Associates, P.A., Lyman, for appellant Keegan J. Fairfield

Aaron M. Frey, Attorney General, and Laura A. Yustak, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Maine State Police

York County Superior Court docket number AP-2020-25
FOR CLERK REFERENCE ONLY