STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, ss.                                     CIVIL ACTION
                                                  DOCKET NO. CV-24-17

PENQUIS C.A.P. INC.,                    )
                                        )
        Plaintiff,                      )
                                        )
   v.                                   )
                                        )
MAINE DEPARTMENT OF HEALTH              )
AND HUMAN SERVICES, THE                 )
BUREAU OF GENERAL SERVICES,             )     **DECISION ON PENDING**
and THE OFFICE OF MAINECARE             )     **MOTIONS TO DISMISS**
SERVICES,                               )
                                        )
        Defendants,                     )
                                        )
     and                                )
                                        )
WALDO COMMUNITY ACTION                  )
PARTNERS,                               )
                                        )
        Party-in-Interest.              )

After losing a state contract to a competing bidder, Plaintiff Penquis C.A.P.

Inc. ("Penquis") initiated administrative appeal proceedings before Defendant

Bureau of General Services ("BGS") and submitted certain Freedom of Access Act

("FOAA") requests to Defendant Department of Health and Human Services

("DHHS") to gather information for its appeal. In this action, Penquis alleges that

DHHS violated various provisions of FOAA through its handling of Penquis's

requests for records and that BGS[1] violated its due process right to receive and

present evidence in support of its administrative appeal. BGS and DHHS have filed

---

[1] The court infers that the due process claim is asserted against BGS;
Penquis does not specify.

1

motions to dismiss pursuant to Maine Rules of Civil Procedure 12(b)(1) and 12(b)(6), which are currently pending before the court. For the following reasons, the court grants both motions to dismiss.

## BACKGROUND

Penquis is a non-profit corporation that provides transportation services to vulnerable individuals living in rural areas of Maine. Verified Compl. ¶ 1. On May 15, 2023, DHHS issued a multi-district Request for Proposals ("RFP") seeking non-emergency transportation providers to serve eight distinct regions throughout the State. *Id.* ¶ 5. Penquis, which then had a contract to serve two of those regions, submitted bids for contracts in Regions 2, 3, 4, and 8. *Id.* ¶¶ 6-7. On October 5, 2023, Penquis received notification that it had not been successful in securing a contract; a competing bidder, ModivCare, was awarded contracts in all eight regions instead. *Id.* ¶¶ 8-9.

Penquis thereafter appealed the conditional contract awards to BGS. *Id.* ¶ 12; Verified Compl. Ex. D;[2] *see also* 5 M.R.S. § 1825-E. The appeal asserted, inter alia, that DHHS awarded the contracts to ModivCare based on criteria that was not

---

[2] The Verified Complaint refers to various attached exhibits. All parties rely upon the exhibits for purposes of the pending motions and no party challenges the authenticity of these documents. Accordingly, the exhibits "merge into the pleadings" and are properly considered on a motion to dismiss. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 10, 843 A.2d 43 (holding that "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint may be properly considered on a motion to dismiss without converting the motion to one for a summary judgment when the authenticity of such documents is not challenged").

identified in the RFP, including the fact that ModivCare provided free rides to vaccination clinics during the COVID-19 pandemic. Verified Compl. Ex. D. On Penquis's motion, BGS stayed DHHS's contract award decision pending the administrative appeal proceedings. Verified Compl. ¶¶ 10, 11; Verified Compl. Exs. B, C. BGS scheduled an appeal hearing for December 14 and 15, 2023. Verified Compl. ¶ 13.

In pursuit of evidence for its appeal, Penquis submitted various FOAA requests to DHHS, two of which are the subject of Penquis's complaint. *Id.* ¶ 14. The first request at issue was submitted on November 15, 2023 ("the November Request"), and sought "all communications between [DHHS] employees and agents regarding transporting Maine residents to Covid-19 vaccination appointments and any and all communications between DHHS and ModivCare, including but not limited to communications about providing transportation services to Maine residents to receive Covid-19 vaccine rides." Verified Compl. ¶ 16; Verified Compl. Ex. F. The other request, submitted on December 22, 2023 ("the December Request"), sought "all reports provided to [the Office of MaineCare Services] or DHHS from ModivCare/LogistiCare and Penquis from July 2014 to November 2023." Verified Compl. ¶ 35; Verified Compl. Ex. P. To afford Penquis the time to receive and review documents responsive to its FOAA requests, the hearing officer agreed to continue the administrative appeal hearing to February 7 and 8, 2024. Verified Compl. ¶¶ 20-22.

DHHS and Penquis continued to communicate regarding the scope and

3

status of the FOAA requests, but as the February appeal hearing approached, DHHS had yet to complete delivery of all responsive documents and some of the documents produced were heavily redacted. *Id.* ¶¶ 18-19, 23-38, 51. Accordingly, on January 10, 2024, Penquis moved for a second continuance of the appeal hearing to allow additional time for the processing of its FOAA requests. Verified Compl. ¶ 40; Verified Compl. Ex. S. The hearing officer denied that motion on January 23, 2024, but noted that "[o]bjections can be raised during the hearing if relevant documents are needed and will be dealt with" at that time. Verified Compl. Ex. W.

## PROCEDURAL HISTORY

Penquis initiated this action by Verified Complaint dated January 29, 2024. Counts I-III allege that DHHS violated various provisions of FOAA through its handling of the November Request, and Counts IV-V allege FOAA violations with respect to the December Request. Count VI, apparently asserted against BGS, claims violations of Penquis's due process right to receive and present evidence in support of its appeal of the contract award decision. Among other relief, the Verified Complaint asks the court to order disclosure of the requested records and stay Penquis's administrative appeal hearing until such records are released.

On January 26, 2024, Penquis filed a motion for a temporary restraining order and preliminary injunction, similarly asking the court to order BGS to stay the appeal hearing pending DHHS's completion of the FOAA requests. The court subsequently issued an order temporarily continuing the appeal hearing. On February 16, 2024, after briefing and argument, the court denied Penquis's motion

4

for a preliminary injunction and permitted the appeal hearing to be scheduled. During a conference on September 10, 2024, the parties informed the court that the appeal hearing had been held and that Penquis has filed a appeal from that proceeding pursuant to Maine Rule of Civil Procedure 80C, which has been transferred to the Business and Consumer Docket.

BGS and DHHS (collectively, "Defendants") have filed motions requesting that the court dismiss the Verified Complaint pursuant to M.R. Civ. P. 12(b)(1) and 12(b)(6). The motions have been fully briefed and are pending decision.

## STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of the complaint. *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83. "For purposes of a Rule 12(b)(6) motion, the material allegations of the complaint must be taken as admitted." *Id.* On review, the court examines the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Oakes v. Town of Richmond*, 2023 ME 65, ¶ 15, 303 A.3d 650 (quotation marks omitted) (quoting *Moody*, 2004 ME 20, ¶ 7, 843 A.2d 43). "A dismissal should only occur when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that [she] might prove in support of [her] claim." *Id.* (alterations in original) (quotation marks omitted) (quoting *Moody*, 2004 ME 20, ¶ 7, 843 A.2d 43). Because Maine is a notice-pleading jurisdiction, "the level of scrutiny used to assess the

sufficiency of a complaint is 'forgiving.'" *Id.* ¶ 16 (quoting *Howe v. MMG Ins. Co.*, 2014 ME 78, ¶ 9, 95 A.3d 79).

To the extent Defendants challenge this court's subject matter jurisdiction over Penquis's claims, *see* M.R. Civ. P. 12(b)(1), that presents a question of law. *See Tomer v. Me. Hum. Rts. Comm'n*, 2008 ME 190, ¶ 9, 962 A.2d 335. "When a motion to dismiss is based on the court's lack of subject matter jurisdiction, [the court] make[s] no favorable inferences in favor of the plaintiff . . . ." *Id.*

## DISCUSSION

Defendants ask the court to dismiss all counts of the Verified Complaint, pointing to justiciability problems, including ripeness, as well as insufficiency of the allegations. The court has already addressed many of these arguments in its order denying Penquis's motion for a temporary restraining order and preliminary injunction, albeit in a different procedural posture. The court in large part adopts the reasoning set forth in that prior order—which reasoning is reproduced as relevant below—and agrees that the Verified Complaint must be dismissed in full.

### I. FOAA Claims (Counts I-V)

Defendants ask the court to dismiss the FOAA claims in Counts I-V pursuant to M.R. Civ. P. 12(b)(1), arguing that Penquis's claims are not ripe. "The doctrine of ripeness prevents 'judicial entanglement in abstract disputes, avoid[s] premature adjudication, and protect[s] agencies from judicial interference until a decision with concrete effects has been made.'" *Blanchard v. Town of Bar Harbor*, 2019 ME 168, ¶ 17, 221 A.3d 554 (alterations in original) (quoting *Johnson v. City of Augusta*,

6

2006 ME 92, ¶ 7, 902 A.2d 855). "A case is ripe if it satisfies two prongs: '(1) the issues must be fit for judicial review, and (2) hardship to the parties will result if the court withholds review.'" *Utsch v. Dep't of Env't Prot.*, 2024 ME 10, ¶ 24, 314 A.3d 125 (quoting *Blanchard*, 2019 ME 168, ¶ 19, 221 A.3d 554). To be fit for review, the controversy must pose a "concrete, certain, or immediate legal problem." *Johnson v. Crane*, 2017 ME 113, ¶ 10, 163 A.3d 832 (quoting *Wagner v. Sec'y of State*, 663 A.2d 564, 567 (Me. 1995)). Any alleged hardships must be more than speculative. *Clark v. Hancock Cnty. Comm'rs*, 2014 ME 33, ¶ 19, 87 A.3d 712.

Here, the court agrees with Defendants that Penquis's FOAA claims are not ripe, as the allegations reveal that DHHS's response to Penquis's FOAA requests is ongoing and the agency has not finally refused, denied, or failed to permit inspection or copying. Nor has DHHS "constructively" denied Penquis's requests.

A. *Penquis's claims are unripe, as DHHS's response to Penquis's FOAA requests remains ongoing.*

Penquis alleges that it made one records request on November 15, 2023, and a second records request on December 22, 2023. FOAA does not mandate a deadline for an agency to produce public documents in response to a request. *See* 1 M.R.S. § 408-A(3) (requiring agency to make a "good faith effort" to fully respond to a request within the nonbinding estimated time frame provided by the responding official). The Verified Complaint reveals that DHHS has already produced documents responsive to these requests, and that the production is ongoing. *E.g.*, Verified Compl. ¶¶ 19, 24, 26, 30, 33-34, 38, 45, 50. The parties continue to

7

negotiate the scope of the requests, which were initially voluminous. *E.g., id.* ¶¶ 19, 38, 46, 50.

Thus, DHHS has not refused or denied Penquis's records requests, nor has it failed to act in response to the requests. *See* 1 M.R.S. § 409(1) (permitting appeal to Superior Court of "a refusal or denial to inspect or copy a record or the failure to allow the inspection or copying of a record" under FOAA). Review at this stage would place the court in the untenable position of opining on the legality of a disclosure process that is not yet complete and would subject DHHS to premature judicial interference. *See Blanchard,* 2019 ME 168, ¶ 17, 221 A.3d 554; *see also Hum. Rts. Def. Ctr. v. Me. Cnty. Comm'rs Ass'n Self-Funded Risk Mgmt. Pool,* 2023 ME 56, ¶ 18, 301 A.3d 782 (expressing preference under FOAA for "efforts to clarify both the scope of the request and the completeness of the response . . . before judicial remedies are invoked"; rejecting argument that would "spawn avoidable litigation by causing requesters to file appeals prematurely when further dialogue might resolve disagreements"); *Utsch,* 2024 ME 10, ¶ 25, 314 A.3d 125 (holding that petition for judicial review was not ripe because allegations as to potential future quarrying activity were too uncertain).

*B. DHHS has not "constructively" denied any of Penquis's requests.*

In support of its contention that its claims are fit for judicial review, Penquis appears to suggest that DHHS has constructively denied its FOAA requests because the agency failed to produce the records prior to the RFP appeal hearing and has not complied with certain interim steps required by statute. *See* Pl.'s Opp'n to

8

DHHS's Mot. to Dismiss 4-7. The court disagrees.

First, as a general matter, while Penquis is correct that "[a] person has the right to inspect any public record unless otherwise provided by statute," *Fairfield v. Maine State Police*, 2023 ME 12, ¶ 13, 288 A.3d 1220, Penquis has not cited any authority for the proposition that a state agency must comply with a FOAA request prior to an RFP appeal hearing, the latter of which must occur on an expedited basis. 5 M.R.S. § 1825-E(3). Indeed, the FOAA and procurement processes are governed by separate statutory regimes that were not designed to operate on the same schedule. Aside from requiring an agency to make a "good faith effort" to produce documents within the estimated time frame, FOAA does not impose a specific deadline for disclosure. *See* 1 M.R.S. § 408-A(3).

Under these circumstances, the court is unable to conclude that DHHS constructively denied Penquis's requests by failing to produce the records prior to the RFP appeal hearing; rather, DHHS appears to be working diligently and within the confines of the FOAA statute to meet its obligations. *E.g.*, Verified Compl. ¶¶ 19, 24, 26, 30, 33-34, 38, 45, 50.[3]

---

[3] Penquis cites *Cook v. Lisbon*, 682 A.2d 672 (Me. 1996), and *Campbell v. Town of Machias*, 661 A.2d 1133 (Me. 1995), in support of its argument that the court should find a constructive denial of its FOAA requests. *See* Pl.'s Opp'n to DHHS's Mot. to Dismiss 4-5. Each case is distinguishable from the matter at hand. In *Cook*, the Lisbon School Committee failed to respond—at all—to the plaintiff's requests until after she initiated suit. 682 A.2d at 679. The Law Court deemed the failure to respond a denial and held that the School Committee could not moot the case by belatedly responding to her requests. *Id.* at 680. In *Campbell*, the Law Court concluded that the plaintiff's FOAA claim was not moot because the Town of Machias had failed to timely respond (again, at all) to multiple FOAA requests and refused to disclose certain documents included in the request. 661 A.2d at 1134-35.

9

The court also rejects Penquis's suggestion that DHHS has constructively denied its FOAA requests by failing to comply with certain interim statutory requirements. To the contrary, the court agrees with DHHS that there have been no reviewable FOAA violations in the Department's response to date; that is, none of the violations that Penquis alleges constitutes a refusal, denial, or failure to permit inspection or copying from which an appeal may be taken.[4]

In Count I, Penquis alleges that DHHS violated 1 M.R.S. § 408-A(3) by asking for clarification about the scope of the November Request more than five days after the agency received the request. Verified Compl. ¶¶ 54-57. The court does not read section 408-A(3), which provides that an agency "shall acknowledge receipt . . . within five working days of receiving the request and may request clarification concerning which public record or public records are being requested," to prohibit clarification requests outside the initial five-day window. Instead, the court reads the statutory five-day requirement to apply to the phrase immediately preceding it—that the agency "shall acknowledge receipt." *See* Black's Law Dictionary 1532-33 (10th ed. 2014) ("[Q]ualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote, unless the

By contrast, here, as set forth in the Verified Complaint, DHHS timely responded to Penquis's requests and has continued to produce documents.

[4] While Defendants do not seek dismissal of the FOAA claims pursuant to M.R. Civ. P. 12(b)(6) and frame their challenges to Counts I-V in terms of ripeness, the court recognizes that its analysis of DHHS's compliance with applicable statutory provisions may implicate the merits of Penquis's claims. Whether viewed as an issue of ripeness pursuant to M.R. Civ. P. 12(b)(1) or an issue with the underlying merits pursuant to M.R. Civ. P. 12(b)(6), Penquis's failure to allege a reviewable FOAA violation counsels in favor of dismissal.

10

extension is necessary from the context or the spirit of the entire writing."); *see also Hum. Rts. Def. Ctr.*, 2023 ME 56, ¶ 18, 301 A.3d 782 (suggesting that "*further* efforts to clarify both the scope of the request and the completeness of the response are to be encouraged" (emphasis added)).

Indeed, Penquis's proposed interpretation could lead to absurd results by preventing a responding agency from seeking clarification as it engages in the statutorily mandated disclosure process.[5] *See Rockland Plaza Realty Corp. v. City of Rockland*, 2001 ME 81, ¶ 12, 772 A.2d 256 ("[S]tatutory language should be interpreted to avoid absurd, illogical, or inconsistent results"). Even if the clarification request did come late, nothing in the statute supports Penquis's assertion that the remedy would be to order immediate disclosure of the apparently voluminous records.

Count II asserts that DHHS committed a second violation of section 408-A(3) by failing to provide a nonbinding estimate of the time it would take to respond to the November Request before the Verified Complaint was filed. *See* 1 M.R.S. § 408-A(3) ("Within a reasonable time of receiving the request, the agency or official shall provide a good faith, nonbinding estimate of the time frame within which the

---

[5] This case presents a perfect example of the dialogue that may occur between the agency and requesting party to refine the contours of a FOAA submission. As Penquis alleges in its complaint, DHHS determined that the December Request would generate approximately 194,000 records, making for an expensive production. This prompted the responding official to ask Penquis whether it wished to submit a revised request. Verified Compl. ¶¶ 37-38. Under Penquis's proposed reading of the statute, DHHS's follow-up question, if interpreted as a belated "clarification" request, would have been prohibited.

11

agency or official will comply with the request and a cost estimate as provided in subsection 9."). To be clear, Penquis alleges that DHHS reported that it was unable at that time to provide an estimate. Given the scope of the November Request, this is not unreasonable. Additionally, the court learned at oral argument on Penquis's motion for a preliminary injunction that DHHS has now delivered such an estimate. Regardless, an indication that the agency was not yet able to provide a time estimate (noting, of course, that the scope of the request was still being clarified) cannot, logically, establish a constructive denial of the request itself when DHHS was producing documents.

Similarly, the court is unable to conclude that DHHS's heavy redactions of the documents it has produced thus far—the subject of Count III—constitutes a constructive denial of the November Request. "[C]onfidential information may be redacted from records that would otherwise be subject to disclosure." *Fairfield*, 2023 ME 12, ¶ 13, 288 A.3d 1220. Here, DHHS has provided redacted documents on a rolling basis at Penquis's request, subject to further review and revision as the agency assesses the records for confidential and trade secrets information. *E.g.*, Verified Compl. ¶ 30; Verified Compl. Ex. N at 4. DHHS has offered to reevaluate specific redactions identified by Penquis as concerning. Verified Compl. Ex. N at 4. As the Verified Complaint suggests that DHHS's review is not yet complete, the court is not convinced that the agency has constructively denied the November Request.

12

Finally, in Counts IV and V, which pertain to the December Request, Penquis alleges that DHHS did not timely notify Penquis that the December Request had been forwarded to the Office of MaineCare Services ("OMS") (Count IV) and that OMS did not timely respond or provide an estimate for production of responsive documents (Count V). These claims similarly fail to convince the court that a reviewable violation of FOAA has thus far occurred.

Per the Verified Complaint, DHHS complied with the requirements of section 408-A(3) by both acknowledging receipt of the December Request within five days, and then shortly thereafter notifying Penquis that the request had been forwarded to OMS, which in turn acknowledged receipt within five days. *See* Verified Compl. ¶¶ 36-38; 1 M.R.S. § 408-A(3) (requiring agency to forward request to office that maintains the official record "without willful delay," and to thereafter notify "requester that the request has been forwarded and that the office to which the request has been forwarded will acknowledge receipt within 5 working days"). Finally, Penquis's assertion in Count V that OMS failed to request clarification or provide an estimate in a timely manner is belied by the Verified Complaint, which demonstrates DHHS's efforts to comply with the statute through extensive back and forth with Penquis regarding the scope of and the time needed to complete the December Request. *E.g.*, Verified Compl. ¶¶ 19, 24, 26, 30, 38, 45, 50.

In short, Penquis's allegations do not demonstrate that DHHS has committed any reviewable FOAA violations to date by refusing, denying, or failing to permit inspection or copying—either actually or constructively. Rather, the disclosure

13

process is ongoing within the parameters of FOAA. The court therefore concludes that Penquis's FOAA claims warrant dismissal pursuant to Rules 12(b)(1) and 12(b)(6).

## II. Due Process Claim (Count VI)

Penquis asserts in Count VI that its Fourteenth Amendment procedural due process rights will be violated if it is forced to proceed with the RFP appeal hearing without having received a full response to its FOAA requests. Defendants seek dismissal of this claim, contending that it is not justiciable and otherwise fails to state a claim.

The court agrees with Defendants that at the time that the Verified Complaint was filed, Penquis's procedural due process claim—premised on concerns that deference will attach to an agency decision made without access to material information—was not ripe. *See Blanchard*, 2019 ME 168, ¶¶ 17, 20, 221 A.3d 554. Because the administrative proceeding has concluded while this matter was pending, the claim is now ripe; however, Rule 80C and the Maine Administrative Procedures Act ("APA"), 5 M.R.S. §§ 8001-11008, provide the exclusive process for judicial review.

To the extent that Penquis sought injunctive relief,[6] the claim is now moot because the administrative proceeding has concluded, and any due process violation

---

[6] While the administrative proceeding was still pending, Penquis sought judicial intervention through this action in "an effort to preliminarily enjoin the Defendants from violating [Penquis's procedural due process] rights," Pl.'s Opp'n to BGS's Mot. to Dismiss 16, noting that the results of the appeal hearing—even if "unfair"—"will be given deference in subsequent appeals." *Id.* at 10.

14

has necessarily already occurred. *See Cohen v. Ketchum*, 344 A.2d 387, 393 (Me. 1975) ("[S]ince it is in the nature of things that this Court cannot prevent events which have already occurred, the issue of restraining the election of January 22, 1975 is moot."). No exception to the mootness doctrine applies. *See A.I. v. State*, 2020 ME 6, ¶ 9, 223 A.3d 910 (stating that the court may consider a moot case only if "(1) sufficient collateral consequences will result from the determination of the questions presented . . . ; (2) the appeal contains questions of great public concern . . . ; or (3) the issues are capable of repetition but evade review . . . ." (quoting *Mainers for Fair Bear Hunting v. Dep't of Inland Fisheries & Wildlife*, 2016 ME 57, ¶ 7, 136 A.3d 714)). Moreover, the requirements of procedural due process are satisfied when adequate post-deprivation remedies exist. *Gregory v. Town of Pittsfield*, 479 A.2d 1304, 1308 (Me. 1984).

As to any post-deprivation due process claim, when an agency's decision is reviewable pursuant to Rule 80C, "that process provides the 'exclusive process for judicial review unless it is inadequate.'" *Antler's Inn & Restaurant, LLC v. Dep't of Public Safety*, 2012 ME 143, ¶ 14, 60 A.3d 1248 (quoting *Gorham v. Androscoggin County*, 2011 ME 63, ¶ 22, 21 A.3d 115); *see also Gregory*, 479 A.2d at 1308. Here, Rule 80C and the APA provide "meaningful procedures . . . to rectify" any due process deprivation at the agency level. *Gregory*, 479 A.2d at 1308.[7]

---

[7] Although the court determines as a matter of law that Count VI should not proceed for other reasons, the court is skeptical that Penquis enjoys a cognizable property interest as required to establish a procedural due process claim. *Carroll F. Look Constr. Co., Inc. v. Town of Beals*, 2002 ME 128, ¶ 11, 16, 802 A.2d 994. The Law Court has held that "disappointed bidders [for a government contract] do not

15

Pursuant to the APA, the court before which the Rule 80C appeal is pending has the authority to preserve the status quo and, upon proper motion, to continue the existing stay of DHHS's contract award decision. 5 M.R.S. § 11004; *see also* 5 M.R.S. § 1825-E(1).

And should Penquis's FOAA requests result in the disclosure of material information after the appeal hearing concludes, Rule 80C and the APA contain procedures that authorize the court to order the taking of additional evidence before the agency. Section 11006(1)(B) of the APA provides:

> The reviewing court may order the taking of additional evidence before the agency if . . . application is made to the reviewing court for leave to present additional evidence, and it is shown that the additional evidence is material to the issues presented in the review, and could not have been presented or was erroneously disallowed in proceedings before the agency. After taking the additional evidence, the agency may modify its findings and decisions, and shall file with the court, to become part of the record for review, the additional evidence and any new findings or decision.

5 M.R.S. § 11006(1)(B); *see also* 5 M.R.S. § 11007(4)(B) (allowing the court to "[r]emand the case for further proceedings, findings of fact or conclusions of law or direct the agency to hold such proceedings or take such action as the court deems necessary").

---

have a property interest unless the applicable law or regulation mandated that the contracting body accept the bid and gave it no discretion whatsoever to reject the bid." *Id.* Here, the applicable statute does not mandate that the agency accept Penquis's bid, and Penquis makes no claim that such a result is required by the RFP. 5 M.R.S. § 1825-B(7); *but see* 5 M.R.S. § 1825-A (defining an "aggrieved person" as "any person who bids on a contract or grant and who is adversely affected, financially, professionally or personally, by that contract or grant award decision"), *and id.* § 1825-E (setting forth appeal process for "[p]ersons aggrieved" by a contract award decision).

16

Because these post-deprivation procedures "provide[] adequate redress to a plaintiff deprived of a constitutionally protected property interest," *Gregory*, 479 A.2d at 1308 (alteration in original), the court concludes that Rule 80C and the APA now provide the exclusive procedure to remedy any due process violation that occurred during the proceeding before BGS. *See Antler's Inn & Restaurant, LLC,* 2012 ME 143, ¶ 14, 60 A.3d 1248. Indeed, Penquis has informed the court that it has filed an appeal from the administrative proceeding pursuant to Rule 80C.

## CONCLUSION

For the foregoing reasons, DHHS's and BGS's motions to dismiss are granted. The Verified Complaint is dismissed in full.

The clerk is directed to incorporate this order on the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: September 25, 2024

_____
Julia M. Lipez
Justice, Superior Court

17