Kathleen **ELVIN**

v.

**CITY OF WATERVILLE.**

Supreme Judicial Court of Maine.

Argued March 21, 1990.
Decided April 18, 1990.

**382**

Robert E. Sandy, Jr. (orally), Sherman, Sandy & Lee, Waterville, for plaintiff.

A.V. Federle, Jr. (orally), Waterville, for defendant.

Before McKUSICK, C.J., and GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

McKUSICK, Chief Justice.

In January 1989 the City of Waterville discharged plaintiff Kathleen Elvin from her job as a fourth grade teacher on the findings of the Waterville Board of Education, pursuant to 20–A M.R.S.A. § 13202 (1983), that she had proven "unfit" to teach and that her continued services were "unprofitable" to the school system. On her appeal, we find no reversible error in the Board of Education's findings and so affirm, as did the Superior Court (Kennebec County, *Alexander, J.*).

Elvin, a divorcee, lives in Winslow with her two children. In the spring of 1987, Elvin engaged in sexual intercourse several times with a fifteen-year-old neighbor who occasionally babysat for her children and did errands for her. The boy, a public high school sophomore, turned sixteen in June, some weeks after the first act of intercourse, and Elvin continued to maintain a sexual relationship with him for several months thereafter.

As a result of these acts, Elvin was indicted on two counts of sexual abuse of a minor on May 4, 1988. The sexual abuse charges were dropped in exchange for Elvin's *nolo contendere* plea to one count of assault stemming from the sexual contact. Shortly after being indicted, Elvin was suspended with pay from her teaching position. Pursuant to 20–A M.R.S.A. § 13202, the Board held a hearing in January 1989 and voted to dismiss Elvin from her fourth grade teaching job.[1] Pursuant to M.R. Civ.P. 80B, Elvin sought judicial review in the Superior Court which affirmed the Board's decision. On appeal, we review the Board's decision directly. *See Gulick v. Board of Envtl. Protection*, 452 A.2d 1202, 1209 n. 6 (Me.1982).

I.

■ The employment of public school teachers in Maine is controlled by statute.

---

1. The members of the Board split four-to-three on the findings of fact critical to the dismissal decision, their disagreement arising principally from different assessments of the credibility of Elvin. We reject, however, Elvin's contention that an appellate court should subject factual findings in a "close case" such as this to special scrutiny. The Board speaks through its majority and the majority's findings are reviewed under the "clearly erroneous" or "substantial evidence" standard exactly the same as the findings of a unitary tribunal resolving close issues of fact. *See Sanford Highway Unit, Local 481, AFSCME v. Town of Sanford*, 411 A.2d 1010, 1013 (Me.1980).

"A school board, after investigation, due notice of hearing and hearing thereon, shall dismiss any teacher ... who proves unfit to teach or whose services the board deems unprofitable to the school." 20–A M.R. S.A. § 13202. The Board concluded that Elvin was unfit to teach and that her services were unprofitable to the school. "The scope of our appellate review is confined to the question whether, on all the evidence in accordance with the correct legal principles, there was a rational basis for the decision" of the Board. *McLaughlin v. Machias School Comm.*, 385 A.2d 53, 56 (Me.1978). Based upon the evidence before the Board, we cannot say that its decision to dismiss Elvin was irrational or arbitrary.

The Board found as a fact that Elvin's "relationship [with the boy] was her own choice, fully consensual, and of long duration." It based its ultimate finding that Elvin had proven unfit to teach upon, *inter alia*, her poor judgment, her lack of concern for the emotional welfare of a public school student, and her impaired ability to deal with other sexually exploited students due to public awareness of her course of conduct. Each of these findings is supported by substantial evidence in the record. Elvin admitted that she exercised poor judgment. In the Rule 11 hearing at which Elvin pleaded *nolo contendere* to the assault charge, she agreed to pay part of the victim's cost of psychological counseling for the reason that, as her counsel acknowledged, she was partly responsible for his current psychological problems. Elvin also admitted that she lied about her conduct when initially questioned by authorities and that she was aware of the boy's psychological problems prior to their sexual relationship. According to the Board, Elvin's actions "put more pressure on the victim" and "aggravated" the situation. Two school administrators testified that, in their professional opinions, returning Elvin to the classroom "would be very detrimental to the schooling system," would adversely affect the system's credibility in dealing with sex abuse cases, would damage the school's reputation, and would cause the public to "los[e] respect

and trust." Upon these findings the Board rationally concluded that Elvin was unfit to teach.

The Board further determined that continuation of Elvin's services would be unprofitable to the school system. In support of this conclusion, the Board found that "the publicity associated with this case certainly has made the public aware of the charges and the sexual relations that [Elvin] had with a young boy from a neighboring school" and that public awareness of her conduct will "undermine her ability and her reputation in dealing with ... students and parents." The Board also found that her continued employment "will undermine the administration's program dealing with sexual abuse and exploitation of children." These findings are supported by substantial evidence in the record. Elvin's relationship with the boy attracted substantial media attention, and school administrators testified that at least one parent reported having a child who knew about the incident. The school administrators also testified about the deleterious consequences of returning Elvin to the classroom. Upon these findings, the Board rationally concluded that Elvin's continued employment would be unprofitable to the school system.

## II.

 Elvin challenges the procedures the Board used to reach its decision. At the hearing the Board received and considered the affidavit submitted to it by the victim, who did not appear at the hearing. The Board heard testimony from numerous witnesses, including the Winslow police detective who thoroughly investigated the criminal allegations against Elvin. The Board also considered without objection by Elvin the written statement given the detective by the victim and the detective's written investigative report describing conversations he had with Elvin, the victim, and the victim's parents. As to the Board's procedure, Elvin's sole contention on appeal is that the Board, by considering the victim's affidavit prepared specifically for the hearing, deprived her of her right to confront

and cross-examine the victim and therefore violated her right to due process.

The victim's affidavit represents only a small part of the whole evidence before the Board. The affidavit simply repeats and incorporates facts in the victim's earlier written and oral statements to the police and was corroborated by extensive information from other sources. Elvin does not object to the Board's admitting and considering the victim's earlier statements. The police detective testified about what he learned from his investigation of the allegations against Elvin, and his testimony corroborates the victim's statements in essential respects. Elvin cross-examined the detective at length and made no attempt to call the victim as a witness. Furthermore, many of the Board's critical findings are based entirely on Elvin's own testimony. She admitted that she had sex with the victim several times between April and October of 1987, that the first act occurred prior to the victim's sixteenth birthday, that the acts occurred in her own home, that she never reported the acts to the victim's family or the authorities, and that the relationship demonstrated poor judgment on her part. She also acknowledged through counsel that she was in part responsible for the victim's subsequent psychological problems.

The due process clause does not preclude the Board from considering statements made by potential witnesses who do not appear at the Board's hearing. In performing their duties administrative tribunals regularly and properly rely on hearsay, such as the victim's police statements and his affidavit. *See McCormick on Evidence* § 353 (3d ed. 1984); 3 Davis, *Administrative Law Treatise* §§ 16.4–16.5 (2d ed. 1980). That evidence is precisely the kind of information "on which responsible persons are accustomed to rely in serious affairs." *NLRB v. Remington Rand, Inc.,*

94 F.2d 862, 873 (2d Cir.), *cert. denied,* 304 U.S. 576, 58 S.Ct. 1046, 82 L.Ed. 1540 (1938). *Cf.* 5 M.R.S.A. § 9057(2) (1989) (comparable provision of Administrative Procedure Act applicable to State agencies). It was perfectly proper for the Board, which had no power to compel a witness to testify at its hearing, to consider that hearsay evidence in this case.

The entry is:

Judgment affirmed.

All concurring.