Kenneth PALMER

v.

The PORTLAND SCHOOL
COMMITTEE et al.

Supreme Judicial Court of Maine.

Argued Oct. 5, 1994.

Decided Jan. 6, 1995.

James P. Boone (orally), Saco, for plaintiff.

Harry R. Pringle (orally), Drummond, Woodsum, Plimpton & MacMahon, Portland, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Kenneth Palmer, a former teacher at the Lincoln Middle School, appeals from the judgment entered in the Superior Court (Cumberland County, *Brodrick, J.*) in favor of the Portland School Committee, its individual members, and the Superintendent of the Portland Schools on his complaint for a breach of the collective bargaining agreement between the Committee and the Portland Teachers' Association, for the Committee's violation of the Freedom of Access Act, 1 M.R.S.A. § 401–410 (1989 & Supp.1994), and seeking review, pursuant to M.R.Civ.P. 80B, of the Committee's decision to dismiss him. Palmer contends that the trial court erred by (1) denying his application to compel arbitration, (2) granting the defendants' motion for a summary judgment on his breach of contract claim, and (3) finding that his freedom of access claim was untimely

filed. He also challenges the sufficiency of the evidence to support the Committee's decision to dismiss him. Finding no error in the record, we affirm the judgment.

The record reflects the following undisputed facts: Palmer taught in the Portland school system for eighteen years. In the spring of 1991, allegations were made that he had used physical force against students on two occasions. The first occurred in April 1991 and involved Palmer kicking the back of a sixth grade student's chair forcing her into a table and resulting in red, painful marks under her ribs. The second incident occurred on May 9, 1991 and involved Palmer becoming irate with a sixth grade student, swearing at him, and grabbing him by the neck. On learning of the two incidents, the Superintendent placed Palmer on administrative leave and brought dismissal charges against him.

Palmer, the Committee, and the Portland Teachers' Association had previously reached a grievance settlement following a complaint against Palmer in 1985 in which Palmer was warned about the use of physical force against students. In response to Palmer's request pursuant to a provision in the collective bargaining agreement allowing for the removal of derogatory material more than five years old from a teacher's personnel file, documents concerning the 1985 grievance settlement were removed from his file. The present charges against Palmer made no reference to the 1985 grievance settlement.

The Committee held a bifurcated hearing to first determine whether Palmer had committed misconduct, and second, if misconduct were established, to determine what action should be taken. At the conclusion of the hearing on the first issue on October 19, 1991, the Committee met with its counsel and deliberated for about an hour. Neither Palmer nor his attorney were present at these deliberations, and there is no evidence that they requested to be present. Thereafter, Palmer's attorney, by letters dated November 1 and 4 to the counsel for the Committee, stated that Palmer wanted to be present at all future deliberations but that he would not pursue any action at that time.

On November 8, the Committee continued its deliberations and concluded that the factual allegations concerning the two incidents in the spring of 1991 had been established. It then began the second part of the hearing to determine what action, if any, to take against Palmer. To rebut Palmer's assertion of outstanding past performance, the Committee received evidence, including two letters, that in connection with the 1985 grievance settlement Palmer had received official notice that any future use of physical force in the context of student discipline would result in a recommendation for his dismissal. At the conclusion of all the evidence concerning what action to take and conducting further deliberations, the Committee dismissed Palmer on December 4, 1991.

Palmer filed the present action seeking restoration to his position and damages. Eleven months after filing the action, Palmer filed an application to compel arbitration. After a hearing, the trial court denied Palmer's motion to compel arbitration, affirmed the Committee's decision to dismiss Palmer, found that the claimed Freedom of Access violation was untimely filed, and granted the defendants' motion for a summary judgment in their favor on Palmer's breach of contract claim. From the judgment entered accordingly, Palmer appeals.

## I.

■ Palmer contends that the Superior Court erred in denying his application to compel arbitration pursuant to 14 M.R.S.A. § 5928 (1980).[1] Palmer filed the application on November 9, 1992 in response to the Committee's allegation that he had failed to exhaust his remedies pursuant to the collective bargaining agreement. Article X of the collective bargaining agreement between the Portland School Committee and the Portland Teachers' Association provides that a grievance must be brought within thirty days of the employee gaining knowledge of the event giving rise to the grievance. The grievance procedure set forth in Article X provides for a five-step process with arbitration available only if the grievance is not resolved by the procedures set forth in the previous steps. The event giving rise to the grievance forming the basis of Palmer's application for arbitration occurred on November 8, 1991, when the Committee allowed in evidence the letters concerning the 1985 grievance settlement. At no time did Palmer institute any grievance pursuant to Article X. Accordingly, the trial court properly denied his application to compel arbitration.

## II.

■ Palmer also contends that the trial court erred by granting the Committee's motion for a summary judgment on his claim that the Committee had breached Article XVII(A) of the collective bargaining agreement.[2] Here, because Palmer failed to exhaust the grievance procedures provided in Article X of the collective bargaining agreement by a timely pursuit of his grievance, the trial court properly granted the Committee's motion for a summary judgment in its favor on Palmer's breach of contract claim.

1. 14 M.R.S.A. § 5928(1) (1980) provides, in pertinent part:
   On application of a party showing an agreement described in section 5927 and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration.
   14 M.R.S.A. § 5927 (1980) provides:
   A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. This chapter also applies to arbitration agreements between employers and employees or between their respective representatives, unless otherwise provided in the agreement.

2. Article XVII(A) of the collective bargaining agreement between the Committee and the Portland Teachers' Association provides:

   Teachers shall have the right to examine their individual personnel file under reasonable conditions established by the Superintendent. No material added after original employment shall be placed in a teacher's personnel file unless the teacher has had an opportunity to review the material. The teacher may submit a statement regarding any material which shall be added thereto. Material relating to Association activities shall not be included in the personnel file. Derogatory materials and evaluations more than five years old shall be removed from the files upon the teacher's request.

## III.

Palmer further contends that the trial court erred by determining that his claim pursuant to the Freedom of Access Act[3] was untimely. A Freedom of Access claim must be filed within thirty days of discovering a possible violation. *See Marxsen v. Bd. of Directors, M.S.A.D. # 5,* 591 A.2d 867, 871 (Me.1991) ("thirty-day time limit provided by Rule 80B commences upon discovery of the Freedom of Access violation"); 1 M.R.S.A. § 409(2) (1989) ("[u]pon learning of any such action, any person may appeal to any Superior Court in the State"). Although Palmer knew of the Committee's challenged deliberations by November 1, 1991 at the latest, he did not file his Freedom of Access claim until December 30, 1991, nearly two months after discovering the alleged violation. Accordingly, the court properly determined that his claim was untimely.

## IV.

Palmer finally contends that the evidence is insufficient to support the Committee's conclusion that he is unfit to teach and that his services are unprofitable to the school. We disagree. When, as here, there is an appeal from the Superior Court's judgment following its review of the record developed before the Committee, we review that record directly to determine if there was a rational basis for the Committee's decision. *Elvin v. City of Waterville,* 573 A.2d 381, 383 (Me.1990) (based upon evidence before Board, its decision to dismiss Elvin not irrational or arbitrary).

To dismiss a teacher, "[a] school board, after investigation, due notice of hearing and hearing thereon, shall dismiss any teacher, although having the requisite certificate, who proves unfit to teach or whose services the board deems unprofitable to the school." 20–A M.R.S.A. § 13202 (1993).

We have previously stated that

[i]n determining whether the teacher's conduct thus indicates unfitness to teach, the board may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers. These factors are relevant to the extent that they assist the board in determining a teacher's fitness to teach, i.e., in determining whether the teacher's future classroom performance and overall impact on his students are likely to meet the board's standards.

*Wright v. Superintending Sch. Comm., City of Portland,* 331 A.2d 640, 646 (Me.1975) (citation omitted). To meet the standard of unprofitable to the school, "there must be some showing that his usefulness has been impaired and that the good of the school requires his dismissal." *Winship v. Brewer Sch. Comm.,* 390 A.2d 1089, 1093 (Me.1978).

In reaching its decisions that Palmer is unfit to teach and unprofitable to the school, the Committee found that Palmer mistreated and humiliated students in direct opposition to the directives of his superiors, used physical force in two incidents in which it was not necessary, violated the Committee's policies on the use of discipline and force, created

---

**3.** The Freedom of Access Act provides, in pertinent part,

    **6. *Permitted deliberation.*** *Deliberations* may be conducted in executive sessions on the following matters and no others:

    **A.** Discussion or consideration of the employment, appointment, assignment, duties, promotion, demotion, compensation, evaluation, disciplining, resignation or dismissal of an individual or group of public officials, appointees or employees of the body or agency or the investigation or hearing of charges of complaints against a person or persons subject to the following conditions:

    . . . .

    **(2)** Any person charged or investigated shall be permitted to be present at an executive session if that person desires.

1 M.R.S.A. § 405(6)(A)(2) (1989).

well-known incidents that have had a disruptive effect on the students and school, failed to take the steps to learn to control his temper, and disregarded the constructive criticisms of his superiors. The Committee considered the likelihood that Palmer's conduct has had an adverse effect on students and teachers and the fact his conduct reflects a continuing problem. It also considered the extenuating and mitigating circumstances, including Palmer's motives, the likelihood for repetition, the effect of his dismissal in comparison with the effect of his retention, his usefulness as a teacher, the risk he presents, his notoriety in the school, the misconduct of the students who were disciplined, and the impact on the students involved. Further, the Committee considered the clear directives on the use of force, and the fact that Palmer's future performance is not likely to meet the Committee's standards.

The Committee applied the correct legal principles for dismissal and each of its individual findings is supported by substantial evidence in the record. Accordingly, the trial court properly affirmed the Committee's decision.

The entry is:

Judgment affirmed.

All concurring.