MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:        2023 ME 56
Docket:          Ken-22-420
Argued:          June 8, 2023
Decided:         August 22, 2023

Panel:          STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

HUMAN RIGHTS DEFENSE CENTER

v.

MAINE COUNTY COMMISSIONERS ASSOCIATION
SELF-FUNDED RISK MANAGEMENT POOL

HORTON, J.

[¶1]  The Maine County Commissioners Association Self-Funded Risk Management Pool (Risk Pool) appeals from a judgment of the Superior Court (Kennebec County, *Billings, J.*) awarding attorney fees to the Human Rights Defense Center (HRDC), based on the court's ruling after an evidentiary hearing that the Risk Pool had refused in bad faith to comply with HRDC's request for records pursuant to the Maine Freedom of Access Act (FOAA), 1 M.R.S. §§ 400-414 (2023).

[¶2]  This case presents the first occasion for us to consider what

2

constitutes "bad faith" for purposes of FOAA's fee-shifting provision.[1]  1 M.R.S. § 409(4).  Because the Risk Pool never denied or explicitly refused to comply with HRDC's request, we must consider the circumstances under which a public entity's failure to comply with a FOAA request rises to the level of a bad-faith refusal to comply.  *See id.*  Here, the Risk Pool's failure to produce any of its records in response to HRDC's FOAA request, despite HRDC's repeated efforts to clarify what should already have been clear, can only be viewed as, in the court's words, "deceptive and abusive of the FOAA process."  We agree with the court that the Risk Pool's response constituted a bad-faith refusal and we affirm the judgment.

## I.  BACKGROUND

### A.    Factual Background

[¶3]  "The following facts are drawn from the court's findings, which are supported by the record . . . ." *Dubois v. Dep't of Agric., Conservation and Forestry*, 2018 ME 68, ¶ 2, 185 A.3d 743.

[¶4]  HRDC is a non-profit organization that collects information from law enforcement and corrections agencies and other public entities in furtherance

---

[1]  Based on the novel-for-us issue presented, we granted a motion by the Maine Association of Criminal Defense Lawyers, Maine Freedom of Information Coalition, Maine Press Association, New England First Amendment Coalition, and Public Justice, for leave to file a joint amicus brief. Their joint brief supports an affirmance of the judgment.

of its mission to advocate for change in the criminal justice system. The Risk Pool is an unincorporated, public, self-funded pool that provides risk management services to Maine counties under a contract with the Maine County Commissioners Association. *See* 30-A M.R.S. §§ 2251-2256 (2023) (authorizing public, self-funded pools). Malcolm Ulmer, the Risk Pool's director of operations, maintains a claim file on each claim handled by the Risk Pool.

[¶5] At some point before June 18, 2021, HRDC became aware, through a *Portland Press Herald* article, of the settlement of a federal lawsuit against Kennebec County alleging maltreatment of a prisoner at the Kennebec County Jail. The article indicated that the action was settled by the County's payment of $30,000 to the plaintiff. HRDC submitted a FOAA request to Kennebec County for documents showing payments related to the action and settlement. The County's attorney responded by sending HRDC copies of pleadings filed in the matter and a copy of a settlement agreement. However, the settlement agreement indicated only that the settlement was in consideration of "One Dollar and Other Good and Valuable Consideration" and did not mention the $30,000 payment cited in the article.

[¶6] On June 18, 2021, HRDC submitted via email to the Risk Pool what it designated as a FOAA request for "any documents showing payments

disbursed to Jonathan Afanador and/or attorney John Wall[] by Kennebec County, Nathan Willhoite, and/or the Maine County Commissioners Association Self-Funded Risk Management Pool from January 1, 2021 to present. This includes but is not limited to payment documentation related to the following case: Afanador v. Kennebec County Case No: 1:20-cv-00235-JDL."

[¶7] Ulmer, on behalf of the Risk Pool, responded via email the same day, stating that he understood that the County's attorney had already provided a copy of the settlement agreement to HRDC and noting that the settlement amount was $30,000. HRDC replied promptly to point out that the settlement agreement did not indicate the dollar amount of the settlement and asked, "[d]o you have any documentation that shows the $30,000 amount?" The Risk Pool responded with a message saying only, "See attached," attaching the *Portland Press Herald* article stating that the case settled for $30,000, and not any Risk Pool document from his claim file. On June 21, 2021, HRDC sent another follow-up email asking for "a copy of the actual agreement that shows $30,000." On the same day, the Risk Pool replied that the release that HRDC received from the attorney for Kennebec County was the "actual agreement" and that "I have already advised you that the settlement amount is $30,000."

[¶8]  On July 2, 2021, counsel for the American Civil Liberties Union of Maine (ACLU of Maine) sent a letter via email to the Risk Pool and the attorney for Kennebec County indicating that the ACLU of Maine was representing HRDC in connection with its FOAA request and stating that "Kennebec County's FOAA response thus far is not in compliance with the FOAA."  The letter pointed out that the settlement agreement produced by Kennebec County's attorney did not contain the dollar amount paid in settlement and that "[n]o documents were produced that show that $30,000 was paid to Mr. Afanador, nor were any documents produced showing payment to any attorneys involved in the case." The letter pointed out that "documents that are potentially responsive to the FOAA request include accounting records, a copy of a cover letter that was sent with payment, emails between individuals in county government and officials in the sheriff's office, or memoranda suggesting that officers not engage in whatever conduct led to the filing of the litigation in the first place."  The letter concluded by noting that HRDC would treat a failure to provide all responsive documents as a final denial or refusal pursuant to 1 M.R.S. § 409(1).  The Risk Pool responded by stating that "it is [its] understanding that the signed release provided to [HRDC] by [Kennebec County] is the only settlement release

6

document." The Risk Pool's reply did not indicate whether the Risk Pool possessed what HRDC had requested—"payment documentation."

**B.    Procedural History**

[¶9] Pursuant to FOAA's appeal procedure, HRDC filed a complaint in the Superior Court on July 27, 2021, against Kennebec County and the Maine County Commissioners Association. *See* 1 M.R.S. § 409(1). Kennebec County responded on September 7, 2021, by asserting that it had provided HRDC with all responsive documents in its possession. *See id*. ("The agency or official shall file a statement of position explaining the basis for denial . . . ."). The Maine County Commissioners Association filed its statement of position on September 27, 2021, asserting that HRDC should have named the Risk Pool as a party instead of the Maine County Commissioners Association. *See* 1 M.R.S. § 409(1). HRDC filed a motion to amend its complaint on October 4, 2021, to add the Risk Pool as a party. HRDC's motion explained that it did not initially name the Risk Pool as a party because it believed that the Risk Pool was part of the Maine County Commissioners Association. On October 25, 2021, the court granted HRDC's motion to amend. The order did not address Kennebec County's or the Maine County Commissioners Association's statements of positions. On November 15, 2021, the Risk Pool filed an answer and affirmative

defenses to HRDC's amended complaint, asserting that HRDC's appeal was untimely, that all responsive documents were produced, and that any documents withheld are privileged. On January 24, 2022, HRDC moved to dismiss its appeal as to Kennebec County and the Maine County Commissioners Association. The court granted the motion on February 1, 2022, leaving the Risk Pool as the only defendant. *See* M.R. Civ. P. 41(a)(2).

[¶10] On March 1, 2022, the Risk Pool filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), asserting that HRDC had failed to meet the FOAA requirement that an appeal be filed within thirty calendar days of the agency's "refusal, denial, or failure" to comply with a FOAA request. 1 M.R.S. § 409(1). HRDC's memorandum in response to the Risk Pool's motion contended that its joinder of the Risk Pool related back to its timely initial complaint because HRDC would have named the Risk Pool initially but for a mistake, and the mistake caused no prejudice because the Risk Pool was aware of the action from its outset. *See* M.R. Civ. P. 15(c)(3) (relation back of the joinder of a party). HRDC included an affidavit of counsel explaining why HRDC had not initially joined the Risk Pool in its appeal. The court denied the motion to dismiss, agreeing with HRDC that "there was good reason for [HRDC's] confusion" about

whether the Risk Pool was a distinct legal entity, and ruled that HRDC's joinder of the Risk Pool in its amended complaint related back to its initial complaint.

[¶11] The court held a bench trial on September 29, 2022. The court heard testimony from the executive director of HRDC and Ulmer. During the trial, the Risk Pool acknowledged that it did in fact have "payment documentation" (the same term used in HRDC's FOAA request) for the settlement and had still not provided it to HRDC. When pressed on why documents showing the amount of payment had still not been provided, the Risk Pool claimed that HRDC had not requested them.

[¶12] After the hearing, HRDC and the Risk Pool filed written closing arguments. By its decision, dated December 1, 2022, the court noted that Ulmer had testified "that he was in possession of a claim file and financial records that contained documentation that showed the Risk Pool had paid $30,000 to settle [the] claim, but did not release those documents because he did not believe that HRDC had specifically requested them." The court found that the Risk Pool "is in possession of responsive documents and wrongfully refused to release them" and ordered that the Risk Pool disclose all responsive documents "showing that it paid $30,000 to settle the case." The court granted HRDC's request for attorney fees based on what it found was the Risk Pool's bad-faith response to

HRDC's request, because "the Risk Pool's behavior was so deceptive and abusive of the FOAA process." *See* 1 M.R.S. § 409(4). The court found that

> [a]t every stage of the FOAA process, the Risk Pool and Mr. Ulmer adopted bizarre interpretations of HRDC's request to avoid disclosure, despite knowing from the beginning that they were in possession of responsive documents. This type of obfuscation and prevarication undermines the basic purpose of the FOAA, which is to enable the public to be informed about what their government is up to.

[¶13] The Risk Pool filed a motion to alter or amend the final judgment on December 15, 2022. M.R. Civ. P. 52(b). On February 6, 2023, the court denied the Risk Pool's motion for amended findings of fact without comment. The Risk Pool timely appealed from the final judgment. M.R. App. P. 2B(c)(1); 14 M.R.S. § 1851 (2023).

## II. DISCUSSION

[¶14] "[W]e review the trial court's factual findings for clear error and its interpretation of FOAA de novo." *Fairfield v. Me. State Police*, 2023 ME 12, ¶ 9, 288 A.3d 1220. The Risk Pool raises two arguments on appeal. It contends that HRDC's appeal was untimely and that the court erred in awarding attorney fees to HRDC.

10

## A. Timeliness of HRDC's Appeal

[¶15]  Under FOAA "[a]ny person aggrieved by a refusal or denial to inspect or copy a record or the failure to allow the inspection or copying of a record . . . may appeal . . . within 30 calendar days of the receipt of the written notice of refusal, denial, or failure . . . ."  1 M.R.S. § 409(1).  The thirty-day period runs from the date on which the requesting party learns of an agency's violation of FOAA in the form of a wrongful refusal, denial, or failure to comply with FOAA.  *See Palmer v. Portland Sch. Comm.*, 652 A.2d 86, 89 (Me. 1995) ("A Freedom of Access claim must be filed within thirty days of discovering a possible violation.").

[¶16]  The Risk Pool asserts that HRDC's appeal was untimely for two alternate reasons.  First, the Risk Pool argues that the thirty-day period began to run on June 21, 2021, because "the undisputed evidence is that [Ulmer] had responded to the request as much as he was going to by June 21, 2021," and HRDC's filing of its original complaint on July 27, 2021, was therefore untimely.  Second, the Risk Pool argues that even if HRDC's initial complaint were deemed timely, it failed to name the Risk Pool as a defendant, and the court erred in deciding that the addition of the Risk Pool as a defendant in HRDC's amended complaint related back to the filing of the initial complaint.  *See* M.R. Civ. P. 15. We disagree on both points.

[¶17]  The Risk Pool's contention that its June 21, 2021, response to HRDC's request triggered the appeal period because HRDC should have taken it as the Risk Pool's final response is unfounded.  HRDC's initial June 18, 2021, request was for "any documents showing payments" made to settle the case, and its clarification sought "documentation that shows the $30,000 amount." The Risk Pool's June 21, 2021, reply did not indicate whether the Risk Pool possessed such documents.  HRDC was fully justified in attempting to ensure, through its counsel's July 2, 2021, follow-up letter, that the Risk Pool understood what HRDC was requesting.

[¶18]  Moreover, as a matter of FOAA procedure, when an agency plainly is not interpreting a request to mean what the requester intends, further efforts to clarify both the scope of the request and the completeness of the response are to be encouraged before judicial remedies are invoked.  To accept the Risk Pool's argument would likely spawn avoidable litigation by causing requesters to file appeals prematurely when further dialogue might resolve disagreements.  Here, HRDC's counsel's July 2 letter pointing out that "Kennebec County's FOAA response *thus far* is not in compliance with the FOAA" shows that HRDC did not interpret Ulmer's June 21, 2021, message as a final response.  (Emphasis added.)  The Risk Pool's July 6, 2021, response to

that letter stated that there were no other documents responsive to HRDC's request. It was that response that triggered the appeal deadline, and HRDC's complaint, filed on July 27, 2021, was therefore timely.

[¶19] The Risk Pool's contention that HRDC's amended complaint adding the Risk Pool as a party should not relate back to the initial complaint is equally unpersuasive. Maine Rule of Civil Procedure 15(a) allows for changes of parties or the naming of parties. "An amended pleading relates back to the date of the original pleading where the claim asserted in the amended pleading 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" *Frame v. Millinocket Reg'l Hosp.*, 2013 ME 104, ¶ 13, 82 A.3d 137 (quoting M.R. Civ. P. 15(c)(2)). The "relation back" provision of Rule 15(c)(3) further provides:

> An amendment of a pleading relates back to the date of the original pleading when . . . (3) the amendment changes the party or the naming of the party against whom a claim is asserted if . . . the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

[¶20] The Risk Pool does not deny that it was aware of the action almost as soon as it was brought and does not contend that the delay in its joinder resulted in any prejudice. Instead, the Risk Pool argues that HRDC's failure to

name the Risk Pool was not a mistake and that HRDC unduly delayed moving to amend its complaint to add the Risk Pool as a defendant. However, the Risk Pool does not contend that HRDC knew, as of when it filed its initial complaint, that the Risk Pool was separate from Kennebec County and the Maine County Commissioners Association, and it does not proffer any reason other than a mistake for HRDC's initial failure to include the Risk Pool as a defendant. As to delay, we have indicated that a party seeking leave to amend must act without unreasonable delay once the party becomes aware of grounds for a motion to amend. *See John W. Goodwin, Inc. v. Fox*, 642 A.2d 1339, 1341 (Me. 1994). Here, HRDC filed its motion to add the Risk Pool as a defendant a week after the Maine County Commissioners Association filed its answer identifying the Risk Pool as a separate entity. The court did not err in concluding that the joinder related back to HRDC's timely initial filing.

## B.      The Award of Attorney Fees Based on a Finding of Bad Faith

[¶21] On appeal, the Risk Pool argues that the court erred in awarding HRDC attorney fees based on the court's finding that the Risk Pool acted in bad faith in responding to HRDC's FOAA request.[2] *See* 1 M.R.S. § 409(4) (stating that

---

[2] To be awarded attorney fees under FOAA, HRDC must have also been a "substantially prevailing plaintiff." 1 M.R.S. § 409(4) (2023). The Risk Pool has not appealed the court's finding that it violated FOAA or the order requiring the Risk Pool to disclose all the responsive documents in its possession.

14

in an appeal from an agency's refusal of a records request or failure to allow inspection or copying of a record, "the court may award reasonable attorney's fees and litigation expenses to the substantially prevailing plaintiff . . . if the court determines that the refusal . . . was committed in bad faith"). We review de novo the court's interpretation of the statute, and "we review the court's factual findings for clear error." *Blue Sky W., LLC v. Me. Revenue Servs.*, 2019 ME 137, ¶ 24, 215 A.3d 812. "We review a court's award of attorney fees for an abuse of discretion, mindful that the trial court is in the best position to observe the unique nature and tenor of the litigation as it relates to a request for attorney fees." *Wilmington Tr., N.A. v. Berry*, 2020 ME 95, ¶ 21, 237 A.3d 167 (quotation marks omitted).

[¶22] In interpreting a statute, this Court "look[s] to the plain meaning of the statute, interpreting its language to avoid absurd, illogical, or inconsistent results and attempting to give all of its words meaning." *Jackson Lumber & Millwork Co. v. Rockwell Homes, LLC*, 2022 ME 4, ¶ 10, 266 A.3d 288. The plain meaning of the language may be determined by its dictionary definition. *Id.*

---

*See Citizens for a Strong N.H., Inc. v. Internal Revenue Serv.*, No. 14-cv-487-LM, 2016 U.S. Dist. LEXIS 128118, at *8-10, 2016 WL 5108035, at *3 (D.N.H. Sept. 20, 2016). We conclude that HRDC is a substantially prevailing plaintiff, because HRDC demonstrated that the litigation was "necessary and had a causative effect on the disclosure of the requested information." *Maynard v. Cent. Intel. Agency*, 986 F.2d 547, 568 (1st Cir. 1993) (quotation marks omitted). Without court intervention, HRDC would not have been able to obtain access to the documents it requested. *See id.* at 568-69.

¶ 13. If a statute is ambiguous, this Court may look to legislative intent and legislative history. *Id.* ¶ 10.

[¶23]  We have not previously construed the FOAA attorney fee provision.  Our starting point is in the purposes and framework of the statute. In enacting FOAA, the Legislature mandated that the statute "shall be liberally construed and applied to promote its underlying purposes."  1 M.R.S. § 401. "FOAA's central purpose [is to ensure] the public's right to hold the government accountable."  *Blethen Me. Newspapers, Inc. v. State*, 2005 ME 56, ¶ 32, 871 A.2d 523.  In furtherance of that purpose, FOAA "establishes a general right of the public to inspect and copy public records."  *Doyle v. Town of Falmouth*, 2014 ME 151, ¶ 8, 106 A.3d 1145; *see* 1 M.R.S. § 408-A.  When an agency denies or refuses a request or fails to allow access to a requested record, an aggrieved party may "appeal" to the Superior Court.  1 M.R.S. § 409(1).  Because a FOAA "appeal" can include the taking of evidence, "although the process is described statutorily as an appeal, the trial court actually conducts a trial de novo and does not act in an appellate capacity."  *Blue Sky W., LLC*, 2019 ME 137, ¶ 24, 215 A.3d 812 (quotation marks omitted).  "On such a challenge, the burden of proof to demonstrate just and proper cause is on the agency that denied inspection of the records."  *Id.*  "If a court, after a review, with taking of

testimony and other evidence as determined necessary, determines such refusal, denial, or failure was not for just and proper cause, the court shall enter an order for disclosure." 1 M.R.S. § 409(1).

[¶24]  The Legislature did not include a definition of "bad faith" in the FOAA statute,[3] and we have not been previously called on to define the term for purposes of FOAA.  A legal dictionary defines the term as "[d]ishonesty of belief, purpose, or motive." *Bad faith*, Black's Law Dictionary (11th ed. 2019).  Our jurisprudence on attorney fee awards provides guidance on what can constitute bad faith.  In general, "attorney fees may not be awarded as a sanction in the absence of significant bad faith on the part of a litigant or his agents," *Linscott v. Foy*, 1998 ME 206, ¶ 17, 716 A.2d 1017.  In *Linscott*, we upheld a fee award, noting that a litigant's "obstinate refusal to comply with a valid order" of court was "undertaken in bad faith" and was "abusive of the court and other parties." *Id.* ¶ 18.  In *Cimenian v. Lumb*, we upheld a fee award,

---

[3]  Likewise, the legislation that preceded the statute did not provide any definition for bad faith but noted that the Superior Court had discretion to award attorney fees.  J. Standing Comm. on Judiciary, Legis. Doc. 679, 124th Leg., 1st Sess., at 21 (Me. 2009).  Although we look to the federal Freedom of Information Act (FOIA) for guidance in interpreting the Maine FOAA, *Campbell v. Town of Machias*, 661 A.2d 1133, 1136 (Me. 1995), the term "bad faith" does not appear in the federal statute.  FOIA permits courts to award attorney fees against the Government if the requesting party "has substantially prevailed."  5 U.S.C.A. § 552(a)(4)(E)(i) (2023) (Westlaw through Pub. L. No. 118-10) ("The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.").

observing that "bringing an action without 'even the slightest merit,' [and] testifying untruthfully about matters relevant to the issues being litigated is bad faith." 2008 ME 107, ¶ 13, 951 A.2d 817; *cf. Aubuchon v. Blaisdell*, 2023 ME 5, ¶¶ 16-20, 288 A.3d 805 (awarding attorney fees as a sanction for a "frivolous and contumacious appeal"). These decisions convey that bad faith in litigation can consist of dishonest conduct, but it can also include intentional acts or omissions that thwart the legal process and cause harm to other parties to the action.

[¶25] A similar analysis applies to identifying bad faith in the context of FOAA. The legislative mandate for the FOAA to be "liberally construed and applied to promote its underlying purposes," 1 M.R.S. § 401, applies as forcefully to responding agencies as it does to courts. An agency's duty to apply FOAA in a manner that promotes the Act's purposes calls for the agency to respond to a FOAA request with the purpose of facilitating the requester's timely access to the requested records unless the agency has a good-faith basis for withholding or delaying access. An agency's failure to respond does not in itself establish bad faith. *See Campbell v. Town of Machias*, 661 A.2d 1133, 1135 (Me. 1995) ("[T]he failure to respond to a Maine Freedom of Access request within the time frame set forth in the statute does not constitute a waiver of the

right to withhold the documents at issue. Such a failure to respond is deemed a denial of the request for the documents."). On the other hand, proof that an agency has acted in the opposite manner to facilitating access to its public records—by responding to a request dishonestly, for example, or by deliberately and affirmatively impeding or thwarting valid requests for access—may be sufficient to prove bad faith.

[¶26] Here, HRDC's June 18, 2021, FOAA request was quite specific:

[A]ny documents showing payments disbursed to Jonathan Afanador and/or attorney John Wall[] by Kennebec County, Nathan Willhoite, and/or the Maine County Commissioners Association Self-Funded Risk Management Pool from January 1, 2021 to present. This includes but is not limited to payment documentation related to the following case: Afanador v. Kennebec County Case No: 1:20-cv-00235-JDL.

[¶27] At the hearing, the following exchange occurred between Ulmer on behalf of the Risk Pool and HRDC's counsel:

Q : You have a claim file for the Afanador matter?
A: That's correct.
Q: And the claim file has material related to the settlement of the Afanador matter?
A: Yes.
Q: Including the amount that was paid to Mr. Afanador?
A: Yes.
Q: And you didn't turn over any of those documents in that claim file, did you?
A: Those documents were not requested in the context of this case.

[¶28]  In a previous series of questions, Ulmer was asked whether the Risk Pool had ever provided HRDC with copies of cancelled checks, payment receipts, ledgers, or "any documents showing how much money was paid to Mr. Afanador," and he answered each question by saying that such documents had never been requested.  When HRDC asked, "You have documents like that in your possession, though, don't you?" Ulmer answered, "I have documents that would reflect the payment."

[¶29]  The Risk Pool appears to proffer two reasons for failing to provide the documents in its possession reflecting payment of the settlement, neither of which withstands even cursory examination.  First, the Risk Pool claims that it thought HRDC wanted a settlement agreement that showed the dollar amount of the settlement and that it did not produce anything because there is no such document.   HRDC's  FOAA  request,  however,  was  not  for  a  settlement agreement; it sought "any documents showing payments."  When the Risk Pool initially responded by mentioning the settlement agreement that HRDC had already obtained, HRDC reiterated its original request by asking, "Do you have any documentation that shows the $30,000 amount?"  The Risk Pool ignored this reiteration of HRDC's already clear request and then ignored a subsequent reiteration  in  the  ACLU  of  Maine's  July  2,  2021,  letter,  which  asked  for

documents reflecting the settlement amount, such as "accounting records, a copy of a cover letter that was sent with payment, emails between individuals in county government and officials in the sheriff's office, or memoranda suggesting that officers not engage in whatever conduct led to the filing of the litigation in the first place." Instead of providing the "documents that would reflect the payment" that Ulmer testified were in his claim file, the Risk Pool's July 6, 2021, response to HRDC's letter mischaracterized HRDC's FOAA request as being for a release or agreement: "[I]t is my understanding that the signed release provided to [HRDC] by [Kennebec County] is the only settlement release document and I also advised [HRDC] of the settlement amount."

[¶30] The Risk Pool's second explanation for producing nothing in response to HRDC's request appears to be that HRDC did not request the payment documents in Ulmer's claim file in terms specific enough to suit the Risk Pool. Ulmer testified that his claim file included documents reflecting payment, yet he testified that cancelled checks, payment receipts, and "documents showing how much money was paid to Mr. Afanador" were never requested. HRDC obviously had no way to know whether the settlement amount was paid by check, wire transfer, credit or debit card, an online payment platform, or some other method of payment. HRDC's request for "any

documents showing payments disbursed to Jonathan Afanador" and "any documentation" clearly covered documents in the various categories that the Risk Pool claims were not requested.

[¶31]  Instead of facilitating HRDC's access to the responsive material in the Risk Pool's possession, the Risk Pool did the very opposite, while pretending to facilitate: it mischaracterized HRDC's FOAA request as being different and narrower than it was, ignored HRDC's efforts to correct the mischaracterization, and deliberately withheld access to documents in its possession that clearly were responsive to the request and should have been disclosed.  As we learned at oral argument, although the court ordered the Risk Pool to provide HRDC with the responsive documents, it still has not done so because it continues to maintain that they were not requested.  We agree with the court that "the Risk Pool's behavior was so deceptive and abusive of the FOAA process" that an award of attorney fees based on bad faith is warranted.

The entry is:

Judgment affirmed.

Jeffrey T. Edwards, Esq. (orally), Preti Flaherty Beliveau & Pachios LLP, Portland, for appellant Maine County Commissioners Association Self-Funded Risk Management Pool

Carol J. Garvan, Esq. (orally), Zachary L. Heiden, Esq., and Anahita D. Sotoohi, Esq., American Civil Liberties Union of Maine Foundation, Portland; and Loree Stark, Esq., Human Rights Defense Center, Boynton Beach, Florida, for appellee Human Rights Defense Center

Shelby Leighton, Esq., and Jaqueline Aranda Osorno, Esq., Public Justice, Washington, D.C., for amici curiae Maine Association of Criminal Defense Lawyers, Maine Freedom of Information Coalition, Maine Press Association, New England First Amendment Coalition, and Public Justice

Kennebec County Superior Court docket number CV-2021-131
FOR CLERK REFERENCE ONLY